DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Evelyn Geiser, appeals the judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated her parental rights and granted permanent custody of her daughter, Melissa Geiser Woodruff, to the Wayne County Children Services Board ("WCCSB"). We affirm.
Melissa Ann Geiser Woodruff was born to Appellant on January 5, 1996. Melissa's paternity has not been established. On February 13, 1996, WCCSB filed a complaint alleging that Melissa was a neglected child based on weight loss diagnosed as a failure to thrive. At that time, WCCSB moved for emergency temporary custody. Melissa was placed in shelter care pending adjudication. On April 5, 1996, the trial court adjudicated Melissa a neglected child. She was returned to Appellant's home on May 6, 1996. A dispositional hearing was held on May 8, 1996, at which time the trial court placed Melissa under the protective supervision of WCCSB. Because Appellant had not completed case plan objectives, protective supervision was extended on November 6, 1996.
On January 16, 1997, Melissa received a second failure to thrive diagnosis. Based on her pediatrician's suspicion that the condition resulted from nutritional rather than metabolic factors, WCCSB filed another complaint alleging her to be a neglected child. WCCSB moved the court for temporary custody of Melissa at that time. On February 19, 1997, the trial court adjudicated Melissa a neglected child. On March 20, 1997, following a hearing on disposition, the trial court placed Melissa in the temporary custody of WCCSB. WCCSB implemented an amended case plan under which objectives were divided into four sequential phases. The case plan provided that reunification would occur upon completion of Phase IV. In the months that followed, Appellant completed the requirements of Phase I significantly behind schedule. The requirements of Phase II and, consequently, Phases III and IV, were never completed. On October 1, 1997, the trial court extended temporary custody to March 20, 1998, noting that Appellant had not yet acquired a residence of her own.
On October 10, 1997, WCCSB moved for permanent custody of Melissa. The trial court granted permanent custody to WCCSB on February 19, 1998. Appellant timely appealed and has raised two assignments of error for review.
ASSIGNMENT OF ERROR I
 The trial court erred in terminating Appellant's parental rights because granting permanent custody of Melissa to [WC]CSB is against the manifest weight of the evidence.
In her first assignment of error, Appellant has argued that the trial court's conclusion that Melissa could not or should not be placed with her within a reasonable time was against the manifest weight of the evidence.
In determining whether the juvenile court's decision was against the manifest weight of the evidence, this court applies the same standard used to evaluate criminal and civil judgments.In re James (Oct. 14, 1998), Summit App. No. 18936, unreported, at 6. We must, therefore:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.
Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14, quoting State v. Shue (1994), 97 Ohio App.3d 459,466. This action is reserved for the exceptional case, where the judgment is "so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice[.]"Hardiman v. Zep Mfg. Co. (1984), 14 Ohio App.3d 222, 226, quotingRoyer v. Bd. of Edn. (1977), 51 Ohio App.2d 17, 20.
Termination of parental rights is sanctioned when necessary for the welfare of a child, but is an "alternative of last resort." In re Wise (1994), 96 Ohio App.3d 619, 624. Termination of parental rights in the situation where a child is not orphaned or abandoned is governed by R.C. 2151.414(B), which provides:
 The court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
This is a two-part inquiry, requiring courts to determine by clear and convincing evidence whether (1) the child cannot or should not be placed with either parent within a reasonable time, and (2) it is in the best interest of the child to grant permanent custody to the petitioning agency. In re Higby (1992), 81 Ohio App.3d 466,468.
In deciding whether a child can be placed with his or her parent within a reasonable time or should be placed with a parent, the trial court must find, by clear and convincing evidence, that at least one of the factors enumerated in R.C. 2151.414(E) are present. These factors include:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home[,] * * * consider[ing] parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services * * * made available to the parents * * *.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year * * *;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect[.]
R.C. 2151.414(E). When the trial court finds by clear and convincing evidence that at least one of these factors is present, the court must also conclude that the child cannot be placed with the parent within a reasonable time or should not be placed with either parent. See id.
Phase I of the amended case plan was scheduled to begin April 1, 1997, and to be completed by April 30, 1997. In order to complete Phase I, Appellant was to (1) attend four out of four weekly doctor's appointments; (2) consult with an attorney regarding a social security claim; (3) meet with Dr. Marianne Bowden to discuss psychological testing; (4) attend seven out of nine scheduled visitations; (5) complete paperwork in order to begin the process of obtaining housing through Metro Housing; (6) meet with the caseworker in her home once; and (7) register for parenting classes. Appellant completed the objectives of Phase I, but did not do so until June 11, 1997. At that time, the completion dates for subsequent phases were adjusted.
Phase II was to be completed within the following forty-five days. This phase required Appellant to (1) finish parenting classes; (2) attend eleven of thirteen scheduled visits with Melissa; (3) attend all scheduled doctor's appointments; (4) obtain and maintain stable housing; (5) meet with the caseworkers once per month in her home; and (6) follow recommendations resulting from psychological testing. Bethany Steiner of WCCSB testified that as of January 22, 1998, Appellant had failed to complete the objectives of Phase II. Specifically, Steiner stated that Appellant had only attended seven visits with Melissa and one of the scheduled doctor's appointments. Although Ms. Steiner had been informed that Appellant had undergone psychological testing and had received follow-up recommendations, Appellant had not complied with those recommendations. Ms. Steiner recalled that Appellant had not obtained housing of her own during that period and had lived, instead, with a series of friends. Although Appellant did make contact with Metro Housing, she was never placed on the waiting list because she failed to make monthly payments of $5.00 toward an existing debt. Appellant provided WCCSB with approximately fifteen different addresses during this period. Ms. Steiner stated that it was very difficult to contact or locate Appellant. Appellant's own testimony indicated that her housing situation remained in a state of flux at the time of the hearing.
Melissa was initially removed from Appellant's home after she was diagnosed with failure to thrive. At the time of her initial diagnosis, she had experienced weight loss and a deceleration of growth. Dr. Playl, her pediatrician, concluded that Melissa's condition was most likely a result of nutritional deficiencies and recommended a period of close observation and consistently stable nutrition to assess the risks to her health. Consequently, Phases III and IV of the case plan required Appellant to meet regularly with a dietician in preparation for reunification. Appellant did not complete Phase II, so the objectives of the remaining phases were never addressed.
Dr. Marianne Bowden conducted psychological testing of Appellant during Phase I of the case plan. As a result of her evaluation, Dr. Bowden diagnosed Appellant with a dysthymic disorder and an avoidant personality disorder. She testified that a dysthymic disorder is "a low level chronic depressive disorder * * * mild depressive symptoms that tend to exist over a longer period of time." She defined an avoidant personality disorder as "a long-standing dysfunctional pattern of behavior where an individual tends to chronically avoid facing difficulties." Further, she stated that a diagnosis of this type "[is] mo[r]e pervasive [and] long-standing * * * usually characterological in nature and not as amenable to change."
Appellant has argued that her alleged failure to follow through on the case plan does not adequately demonstrate a lack of commitment to Melissa pursuant to R.C. 2151.414(E) (4). Specifically, she has maintained that her participation in Melissa's medical treatment was significant in that she attended one third of the scheduled doctor's appointments and visitations. She argues, further, that she should not be penalized for failure to attend doctor's appointments "especially when the doctor thought CSB was scheduling too many appointments." She contends that her failure to attend visitation appointments was due to her hectic work schedule as a security guard.
These arguments, however, misrepresent the evidence that was before the trial court. While Appellant did attend a total of approximately one third of scheduled visitations and doctor's appointments, she did not attend two thirds of those scheduled. Dr. Playl stated that as of the date of the permanent custody hearing, he would recommend that Melissa's checkups occur with less frequency. Assuming, arguendo, that Dr. Playl was of the opinion that biweekly medical appointments were excessive during the period prior to the permanent custody hearing, this opinion would not have altered the fact that biweekly visits were ordered in the case plan developed by WCCSB and that Appellant failed to comply with that case plan.
Appellant was employed approximately from May through October. Her attendance at visitation was sporadic, at best, during this period, despite the fact that CSB could provide transportation with forty-eight hours' notice. WCCSB attempted to schedule visitation at times when Appellant would be able to attend. Appellant did not request a modification in the visitation schedule that would be more accommodating to her employment. From October through January, after her employment ended, Appellant attended only one scheduled visitation.
The evidence presented does not weigh heavily in favor of the conclusion that Melissa could be placed with Appellant within a reasonable time. Accordingly, the trial court's determination is not against the manifest weight of the evidence. See State v.Thompkins (1997), 78 Ohio St.3d 380, 387. Appellant's first assignment of error is overruled.
ASSIGNMENT OF ERROR II
 The trial court erred in admitting testimony regarding Appellant's older children because the prejudicial effect outweighed the probative value and further erred to the extent that such evidence was relied upon in the ruling as the evidence was insufficient.
Appellant has argued in her second assignment of error that the trial court abused its discretion by permitting testimony concerning the legal custody of Appellant's three older children. We disagree.
Ms. Steiner testified that Melissa's older siblings had been removed from Appellant's custody following neglect adjudications. She also recalled that the rationale for amending the case plan to provide four separate phases was based in part on Appellant's demonstrated inability to follow through on recommendations, based on observations from the past. Ms. Steiner opined:
 her parenting abilities * * * are less than appropriate, and that's based on my experience of working with her and her other children plus Melissa. I believe that she is neglectful and she does not give the children the care that they do need.
She limited further observations, however, to Appellant's ability to parent Melissa.
R.C. 2151.414(E) (11) requires the conclusion that a child cannot be placed with a parent within a reasonable time or should not be placed with either parent if the court concludes that "[t]he parent * * * allowed the child to suffer neglect * * * and a sibling of the child previously has been permanently removed from the home of the child's parents because the parent abused or neglected the sibling." Evidence is relevant when it has any tendency to make the existence of a fact of consequence to the action more or less probable. Evid.R. 401. Although there was ultimately no evidence presented to demonstrate that Appellant's parental rights to Melissa's older siblings had been terminated, Ms. Steiner's testimony was clearly relevant to the resolution of the motion for permanent custody. See R.C. 2151.414(E) (11).
Evid.R. 403(A) provides that otherwise relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" A trial court's determination that evidence is admissible under Evid.R. 403 will not be disturbed on appeal absent an abuse of the trial court's discretion. State v. Allen (1995), 73 Ohio St.3d 626, 633. An abuse of discretion connotes action by the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. In this case, there is no indication that the danger of unfair prejudice substantially outweighed the probative value of Ms. Steiner's testimony. Accordingly, the trial court did not abuse its discretion by allowing the statements into evidence. Appellant's second assignment of error is overruled.
Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wayne County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ LYNN C. SLABY
FOR THE COURT
WHITMORE, J.
BATCHELDER, J.
CONCUR