**In re HIGBY.**

[Cite as *In re Higby* (1992), 81 Ohio App.3d 466.]

Court of Appeals of Ohio,
Wayne County.

No. 2708.

Decided June 24, 1992.

*Craig Reynolds*, for appellant Douglas Higby.

*Raymond Leisy*, for appellee Wayne County Children Services Board.

*Joi Hemphill*, for guardian *ad litem*.

REECE, Judge.

Douglas Higby, appellant, appeals from the decision of the Wayne County Juvenile Court awarding permanent custody of his daughter, Amanda M. Higby, to the appellee, Wayne County Children Services Board ("CSB").

Amanda was born to Douglas and Debra Higby on January 7, 1983 in Erie County, Pennsylvania. The Higbys are also the parents of Douglas Higby, Jr., who was born after Amanda and has no involvement in this case. The couple separated in July 1984 with Debra retaining custody of the children. In 1987, Debra, along with the children, moved from Pennsylvania to Wooster, Ohio. Following the move Douglas had little contact with his children.

CSB became involved with Amanda in August 1989, following a complaint alleging the child's dependency. As a result, CSB removed Amanda from Debra's home. Although she was returned to Debra in May 1990, Amanda remained there for only three weeks before CSB again intervened. In August 1990, Debra voluntarily surrendered permanent custody of Amanda to CSB. Thereafter, CSB filed a motion for permanent custody with the intent of placing Amanda for adoption. A guardian *ad litem*, also an appellee in this

case, was appointed by the court on September 13, 1990, to represent Amanda's interests.

Notice of the pending action was both published and sent to Douglas in care of the City Mission in Erie, Pennsylvania. As a result, Douglas contacted the court in October 1990 and moved for a continuance of CSB's motion until the possibility of his and Amanda's reunification could be explored. The extension was allowed, prompting CSB to file amended case plans in conformity with the court's orders granting visitation by Douglas.

A hearing on CSB's original motion for permanent custody was held on November 5, 1991. By its judgment entry dated November 22, 1991, the court awarded custody to CSB. Douglas appeals raising the following two assignments of error.

### Assignments of Error

"I. The trail [*sic*] court erred as a matter of law in determining that Amanda Michelle Higby should not be placed in her father's custody within a reasonable time when it did not find, by clear and convincing evidence, that any of the factors enumerated in Section 2151.414(E) of the Ohio Revised Code existed in this case.

"II. The trial court erred as a matter of law in granting the motion for permanent custody of Amanda Michelle Higby to Wayne County Children's Services Board as said finding was against the manifest weight of the evidence."

■ The termination of parental rights in a natural child, when the child is neither abandoned nor orphaned, is governed by R.C. 2151.414(B). Under this statute, the juvenile court must apply a two-prong test. The court must find by clear and convincing evidence that both: (1) the grant of permanent custody to the petitioning agency is in the best interest of the child, and, (2) the child cannot or should not be placed with either parent within a reasonable time. See *In re Jones* (Nov. 27, 1991), Summit App. No. 15116, unreported, 1991 WL 260205.

In applying the first prong, R.C. 2151.414(D) lists five factors, which are exemplary only, for the court to consider in determining the best interest of the child. As to the second prong, R.C. 2151.414(E) states in part:

"In determining * * * whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, *the court shall consider all relevant evidence.* If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court *shall* enter a finding

that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents." (Emphasis added).

This section of the statute goes on to list eight conditions for the court to consider in deciding whether a child can or should be placed with his parent.

 In the case *sub judice* the court did not find that any one of these eight conditions existed as to Douglas. Douglas maintains that these conditions are mandatory. He argues that in the absence of a court's finding, by clear and convincing evidence, that at least one of the conditions exist, the court must decide that the child can or should be placed with the parent within a reasonable time. Therefore, the court should have denied CSB's motion for permanent custody.

We do not agree with Douglas's construction of the statute. The clear import of this section is that it is mandatory on the court to decide that a child cannot be placed with his parent when any one of the eight conditions exist as to that parent. The intent of the legislature was to eliminate any discretion on the part of the court when one of these conditions exist. But this in no way implies that in the absence of such conditions, the court must find that the child can be placed with the parent. R.C. 2151.414(E) specifically states that the court, in determining the status of the parent, "shall consider all relevant evidence." Acceptance of Douglas's position would render this directive superfluous. Such a construction would violate our duty to "accord meaning to each word of a legislative enactment if it is reasonably possible so to do." *State ex rel. Bohan v. Indus. Comm.* (1946), 147 Ohio St. 249, 251, 34 O.O. 151, 152, 70 N.E.2d 888, 889.

 While we reject Douglas's position, we do not agree with the contention of the guardian *ad litem* that the court may terminate parental rights under R.C. 2151.414 when, based on "all relevant evidence," it is in the "best interests" of the child. We acknowledge that the primary and overriding concern in any child custody case is the "best interest of the child." *In re Palmer* (1984), 12 Ohio St.3d 194, 197, 12 OBR 259, 262, 465 N.E.2d 1312, 1314; *In re Cunningham* (1979), 59 Ohio St.2d 100, 105–106, 13 O.O.3d 78, 81, 391 N.E.2d 1034, 1037; *Gishwiler v. Dodez* (1855), 4 Ohio St. 615. At the same time, it is fundamental that in custody dispute between a parent and a nonparent, the court must examine the suitability of the parent. See *Pruitt v. Jones* (1980), 62 Ohio St.2d 237, 238, 16 O.O.3d 276, 276, 405 N.E.2d 276, 276, citing *Clark v. Bayer* (1877), 32 Ohio St. 299; *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047.

The guardian *ad litem*'s position renders meaningless the second prong of the test under R.C. 2151.414(B). If the sole test for deciding custody is the

child's best interests, there would be no reason for the legislature to require the court to separately determine whether a child can be or should be placed with his parent. R.C. 2151.414(B)(1). As already stated, statutes must be interpreted so as to give meaning to every word. *Bohan, supra.*

In requiring the courts, pursuant to R.C. 2151.414(B)(1), to examine whether a child can be placed with his parent, the court must examine the suitability of the parent. We acknowledge that the distinction between the child's best interests and parental suitability is a fine one. In *Cunningham, supra,* 59 Ohio St.2d at 107, 13 O.O.3d at 82, 391 N.E.2d at 1039, the Supreme Court stated:

"We think that the relationship is more subtle, that elements of parental 'unfitness' figure strongly in the 'best interests' test, while elements of 'best interests of the child' weigh in any consideration of whether a parent is fit to have custody of his child." (Citation omitted.)

A parent is unsuitable when the court determines that " * * * the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, *or that an award of custody to the parent would be detrimental to the child."* (Emphasis added). *Perales, supra,* syllabus. See *Reynolds v. Ross Cty. Children's Serv. Agency* (1983), 5 Ohio St.3d 27, 29, 5 OBR 87, 88, 448 N.E.2d 816, 818.

In the present case, the judgment of the trial court states:

"The fundamental inquiry at dispositional hearing is what is in the best interests of the child, and *not whether or not the parents are fit or unfit.* Although elements of parental fitness may well be involved in a determination of best interests, a fit parent is not automatically entitled to custody if the *specific needs* of the child require termination of parental rights. [*Cunningham, supra.*] (Emphasis added.)"

■ Douglas argues that this is an incorrect statement of the law and a misinterpretation of R.C. 2151.414. He contends that because the court did not specifically find him to be an "unfit parent," the court erred in awarding custody to CSB. We disagree.

The focus of the court under the second prong of R.C. 2151.414(B) is on the suitability of the parent. While a parent may be otherwise fit, the issue is whether the parent, under the particular circumstances of the case, is suitable to take custody of the child. A fit parent may be denied custody when the court determines "that an award of custody to the parent would be detrimental to the child." *Perales* and *Reynolds, supra.* In this sense a fit parent may be found unsuitable. The trial court's statement of the law is therefore

correct. Although he may otherwise be a fit parent, Douglas may be found unsuitable given the "specific needs" of Amanda. Implicit throughout the trial court's very thorough findings of fact and judgment entry is the conclusion that awarding custody to Douglas would be "detrimental" to Amanda.

Amanda has a history of physical abuse by her mother and sexual abuse by someone. Testimony was elicited that Amanda suffers from attention deficit syndrome and hyperactivity, requiring treatment with prescription medication. Expert opinion was given that Amanda, because of these problems, needs to be taught in a classroom, both for the structure it provides and the exposure to other children. In spite of these recommendations, Douglas adhered to his intent to teach Amanda at home. The court noted the almost total absence of Douglas from Amanda's life from 1987 through December 1990. As a result, Amanda shows ambivalence towards being reunited with her father. Additionally, the court found that Douglas has "demonstrated a remarkable lack of good judgment." This conclusion was based in part on Douglas's past prison sentence, two DUI convictions and his arrangement, contrary to CSB's instructions, for Amanda to see her mother after she had relinquished custody.

From this same evidence, we cannot agree that the judgment of the court was unwarranted. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus; see, also, *Shear v. W. Am. Ins. Co.* (1984), 11 Ohio St.3d 162, 164, 11 OBR 478, 480, 464 N.E.2d 545, 547. While Douglas presented evidence that he had fully complied with CSB's case plan, we find that the evidence supports the court's conclusion that Douglas is not a suitable parent to take custody of Amanda. It was therefore in Amanda's best interest to terminate Douglas's parental rights in looking towards Amanda's adoption.

Accordingly, Douglas's assignments of error are overruled and the judgment of the juvenile court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and CACIOPPO, J., concur.