DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Trinette Rackley has appealed from an order of the Summit County Common Pleas Court, Juvenile Division, that awarded permanent custody of her daughter, Raven Rackley, to Summit County Children Services Board and terminated her parental rights. She has argued that: (1) the trial court lacked jurisdiction to grant CSB permanent custody of Raven because the alleged father was not timely served with notice of the permanent custody hearing; and (2) the trial court's decision was against the manifest weight of the evidence. This Court affirms the judgment of the trial court because: (1) Ms. Rackley had no standing to assert the rights of the alleged father, absent a showing of prejudice; and (2) the trial court's decision was not against the manifest weight of the evidence.
 I.
Raven Rackley was born on December 17, 1996, to Trinette Rackley. On December 24, 1996, Summit County Children Services Board moved for emergency temporary custody of Raven. The motion was granted. A case plan was developed that required Ms. Rackley to obtain stable housing, obtain appropriate baby supplies, have a mental health assessment, attend parenting classes and demonstrate appropriate parenting skills, and visit Raven regularly. The plan also provided that CSB would meet Raven's needs while she was in its custody. The case plan objectives were to be completed by July 3, 1997. Adjudicatory and dispositional hearings were held on January 30, 1997, during which the parties stipulated that Raven was dependent because Ms. Rackley was unable to obtain stable housing. Raven was adjudicated dependent on February 4, 1997, and CSB was granted temporary custody.
During March 1997, the case plan was amended to delete the mental health assessment requirement and to add the objectives that Ms. Rackley obtain her GED, receive counseling, and arrange for home visits by CSB to verify her housing situation. The new plan also provided that Raven's paternity would be established, and that Ms. Rackley would cooperate by naming all possible fathers and participating in any necessary testing.
On April 23, 1997, CSB filed a motion for permanent custody, alleging that Ms. Rackley had failed to remedy the conditions that had caused Raven's placement with CSB, that none of the alleged fathers was involved with Raven, and that no known relatives were available or appropriate to care for her. The hearing on the motion was held on June 3, 1997. The caseworker, the guardian ad litem, and Ms. Rackley all testified regarding Ms. Rackley's progress with respect to the case plan objectives. The caseworker testified that, in her opinion, Ms. Rackley had not satisfactorily met the case plan goals, and gave her reasons for that conclusion. She also testified that an additional six months would not help Ms. Rackley accomplish those goals, that Raven was doing well in her foster home, that she was adoptable, and that her foster mother had expressed a wish to adopt Raven. Raven's guardian ad litem testified that she had concerns about whether Ms. Rackley could properly attend to Raven's health needs, that no suitable relatives had been found with whom Raven could be placed, and that Raven's foster home was a stable one.
On June 19, 1997, the motion for permanent custody was granted. The trial court found that Ms. Rackley had failed to accomplish the case plan objectives. It found that she had partially completed the stable housing objective; that she had not completed the parenting classes objective, having started attending only in late April and having attended only two or three classes out of nine scheduled classes; that there was insufficient information regarding the baby supplies objective; that the visiting objective had been met, but that Ms. Rackley had shown an inability to cope with Raven's minor health problems; that Ms. Rackley had not met the high school completion objective because she had failed to attend classes; that there was insufficient information regarding the home visits objective; that she had not accomplished the counseling objective; and that the objective of establishing paternity had not been met.
The trial court concluded that Raven could not be placed with her parents within a reasonable time or should not be placed with them because Ms. Rackley had failed continuously and repeatedly to remedy the conditions that caused Raven to be placed outside the home, and/or because Raven's parents failed to show commitment or willingness to provide a permanent home for, or failed to regularly visit, support, or communicate with, her. It expressly determined that Ms. Rackley had failed to accomplish the case plan objectives, despite reasonable and diligent efforts by CSB. It also concluded that Raven was doing well in her foster care environment, that she needed stable surroundings, and that it was in her best interests to be placed in the permanent custody of CSB. Raven's parents were thereby divested of their parental rights, obligations, and responsibilities. Ms. Rackley timely appealed to this Court.
 II. A.
Ms. Rackley's first assignment of error is that the trial court lacked jurisdiction to grant CSB permanent custody of Raven because the alleged father was not timely served with notice of the permanent custody hearing. As this Court has previously held, an appellant may not challenge an alleged error committed against a non-appealing party absent a showing that she herself has been prejudiced by the alleged error. See State v. Ward (Sept. 21, 1988), Summit App. No. 13462, unreported, at 6-7; In the Matterof Donald Matis (May 24, 1995), Summit App. No. 16961, unreported, at 7. See, also, In the Matter of: Matthew Johnson (Nov. 30, 1990), Lucas App. No. L-90-011, unreported, 1990 WL 3714, at *6997-6998. Ms. Rackley has made no such showing, but has merely asserted that Raven's alleged father was not properly served. Her first assignment of error is overruled.
 B.
Ms. Rackley's second assignment of error is that the trial court's decision was against the manifest weight of the evidence. Pursuant to Section 2151.41.4 of the Ohio Revised Code, a court may award permanent custody of a minor child who is neither abandoned nor orphaned to a proper moving agency if it finds, by clear and convincing evidence, that (1) it is in the child's best interests and (2) that the child cannot or should not be placed with either parent within a reasonable time. See In re Higby
(1992), 81 Ohio App.3d 466, 468; In re Davis (July 21, 1993), Summit App. No. 16051, unreported, at 4; and Section 2151.41.4 of the Ohio Revised Code.
When evidence must be clear and convincing, a reviewing court will examine the record to determine whether there was sufficient evidence before the trier of fact to satisfy that degree of proof. See State v. Schiebel (1990), 55 Ohio St.3d 71, 74, certiorari denied (1991), 499 U.S. 961, 113 L.Ed.2d 649. "[A] reviewing court can reverse a judgment upon an assignment of error involving the weight of the evidence only when the verdict is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice[.]" Royer v. Board of Education (1977),51 Ohio App.2d 17, 20, quoting Jacobs v. Benedict (1973),39 Ohio App.2d 141, 144. To determine whether a grant of permanent custody is in a child's best interests, a court is to consider all relevant factors, including, but not limited to, the interaction and interrelationship of the child with relatives and other important figures in the child's life; the child's wishes; the custodial history of the child; and the child's need for a legally secure placement, and whether such placement can be achieved without a grant of permanent custody to the moving agency. See Section 2151.41.4(D) of the Ohio Revised Code.
In considering whether a child can or should be placed with a parent within a reasonable time, the court is to consider all relevant evidence. Section 2151.41.4(E) of the Ohio Revised Code. If, and only if, it finds, by clear and convincing evidence, that one or more of twelve enumerated factors exists as to each parent, it must find that the child cannot or should not be placed with either parent within a reasonable time. See In re William S.
(1996), 75 Ohio St.3d 95, 99. The two factors that the trial court cited in its opinion were:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home[;] * * *
and
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]
See Section 2151.41.4(E) of the Ohio Revised Code.
Ms. Rackley has asserted that permanent custody was not warranted because the trial court found that 66% of the case plan objectives either had been met or were not determinable due to insufficient evidence; that the trial court found that she had failed to accomplish only two out of six objectives; and that she had made efforts toward accomplishing all aspects of the case plan. Essentially, she has challenged the trial court's conclusion that she failed to accomplish the case plan objectives, arguing that the evidence and even the trial court's own findings showed otherwise. This Court disagrees.
First, there were more than two case plan objectives that Ms. Rackley was found to have failed to meet. The trial court explicitly found that she had failed to meet the three goals of receiving counseling, attending parenting classes, and attending high school classes. Furthermore, even though Ms. Rackley visited Raven regularly, the trial court concluded that she had not demonstrated appropriate parenting skills for Raven, noting that she had responded to Raven's minor health problems by panicking and handing her over to the visitation supervisor. Finally, the trial court determined that Ms. Rackley had only partially met the stable housing objective.
Second, the claim that 66% of the case plan objective had either been met or could not be assessed because of a lack of information is misleading, at best. In fact, Ms. Rackley was found to have fully accomplished only one objective, and that was regular visitation. Stable housing was found to be only partially accomplished, and whether Ms. Rackley had obtained adequate baby supplies or arranged for sufficient home visits by CSB could not be determined due to a lack of information, according to the trial court. As pointed out above, Ms. Rackley was found to have failed to meet the counseling, parenting education, and high school education objectives, and to have shown an inability to handle Raven's minor health problems (arguably a failure to demonstrate appropriate parenting skills, one of the case plan goals). Ms. Rackley was found, therefore, to have had one success, one partial success, and four failures with regard to case plan goals. Even if she had actually obtained adequate baby supplies and sufficient home visitation by CSB, factors that the trial court found it could not evaluate, Ms. Rackley would still be left with three successes, one partial success, and four failures. Furthermore, even if Ms. Rackley had, in fact, met 66% of the case plan objectives, she has still not explained why that percentage was sufficient to prevent a permanent custody award to CSB.
Third, Ms. Rackley's assertion that she had "worked toward each and every objective CSB presented" is questionable. Evidence was presented at trial that she had stated at the January 30, 1997, hearing that she was attending parenting classes, high school classes, and counseling sessions through a special high school program for young parents. A follow-up call to the school by her caseworker revealed that Ms. Rackley had attended only one day of high school classes and had not received any counseling. According to Ms. Rackley's testimony, after attending classes for that one day, she made no other attempts to complete her education aside from calling another GED program for information. Furthermore, she attended no parenting classes until late April 1997, attended only two or three out of nine scheduled parenting classes, and testified that she had not paid attention in at least one of those classes. Finally, she apparently never attended any counseling at all. She has claimed that she had difficulty attending school due to transportation problems and that she did not attend counseling because she needed cost-free counseling, which had a waiting list. Her efforts to rectify these problems, however, were minimal, at best.
According to the caseworker's testimony, Ms. Rackley received assistance from CSB aimed at helping her to accomplish these and the other case plan goals. The plan itself was first developed and given to her in January 1997 and updated in March 1997. Visitations between Ms. Rackley and Raven were arranged and supervised. The caseworker gave Ms. Rackley a list of parenting classes and counseling options, and provided her with bus passes several times when Ms. Rackley claimed she could not get herself to her high school classes. The caseworker also visited Ms. Rackley's residences to verify their appropriateness, and attempted to encourage and motivate Ms. Rackley to work toward the case plan objectives. The uncontroverted evidence presented at the hearing was that Ms. Rackley had stated during January that she was already attending parenting and high school classes and receiving counseling through the special high school program, although she had attended only one day of high school classes; did not attend parenting classes until late April, and then attended only two or three times; barely inquired into high school class alternatives; and never received any counseling.
Despite Ms. Rackley's assertions, therefore, there was substantial evidence that the case plan objectives were not all attempted or mostly accomplished, and that the minimal efforts Ms. Rackley made toward the objectives of counseling, education, and demonstrating an ability to meet Raven's basic health needs, indicated that Raven could not be placed with her within a reasonable time. In addition, there was undisputed evidence that Raven was adoptable, that she was doing well in her foster home, that she needed a secure placement, and that her foster mother had expressed a wish to adopt her. The trial court's conclusion that awarding permanent custody of Raven to CSB was in her best interests and that, despite diligent efforts by CSB, she should not or could not be placed with a parent within a reasonable time was not so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice. Ms. Rackley's second assignment of error is overruled.
 III.
Ms. Rackley's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ CLAIR E. DICKINSON
FOR THE COURT
QUILLIN, J., P. J.
REECE, J. CONCUR.