JOURNAL ENTRY and OPINION
Appellant Jessie Benoit appeals the decision of the Cuyahoga Court of Common Pleas, Juvenile Division granting permanent custody of his five children to appellee Cuyahoga County Department of Children and Family Services (CCDCFS). Benoit assigns the following four errors for our review:
 I. BY COMMITTING FIVE CHILDREN TO PUBLIC AGENCY CUSTODY WHEN RELATIVES OFFERED SUITABLE, PERMANENT HOMES, THE JUVENILE COURT FAILED TO SERVE THE CHILDREN'S BEST INTERESTS.
 II. THE COURT COMMITTED REVERSIBLE ERROR IN COMMITTING FIVE CHILDREN TO THE PERMANENT CUSTODY OF A PUBLIC AGENCY WITHOUT MAKING FINDINGS REQUIRED BY STATUTE AND CONTROLLING CASE LAW.
 III. THE JUVENILE COURT COMMITTED REVERSIBLE ERROR IN FAILING TO DETERMINE WHETHER APPELLEE MADE REASONABLE EFFORTS TO ELIMINATE THE REMOVAL OF APPELLANT'S CHILDREN FROM THEIR HOME, AS REQUIRED BY JUVENILE RULE 27(B)(1).
 IV. THE COURT'S ACCEPTANCE OF THE GUARDIAN AD LITEM'S REPORT SEVEN DAYS AFTER TRIAL VIOLATED APPELLANT'S DUE PROCESS RIGHTS AND THE STATUTORY REQUIREMENT OF 2151.414(C) THAT THE GUARDIAN'S WRITTEN REPORT BE FILED PRIOR TO OR AT THE TIME OF THE DISPOSITIONAL HEARING IN A CASE INVOLVING ABUSE, NEGLECT OR DEPENDENCY.
Having reviewed the record and the legal arguments of the parties, we affirm, in part, and reverse, in part, the judgment of the trial court. The apposite facts follow.
Appellant Jessie Benoit is the legal father of Kunhwa and Jacques Benoit, and Cynthia, Henry and Jessie Blade. Kunhwa and Jacques' mother, Jin Suk Parks, left the children in Benoit's care prior to November 1987. Parks' whereabouts are unknown. Similarly, Cynthia, Henry, and Jessie's mother, Plushette Blade, left the children in Benoit's care. Her whereabouts are also unknown.
The children were committed to the temporary custody of CCDCFS in July 1996, after Benoit left them at home, unsupervised, with no food. In July 1998, CCDCFS moved for permanent custody of the children. The court set trial on CCDCFS' motion for January 25, 1999.
At trial, CCDCFS presented two witnesses Paula Risdale, a foster care social worker with Family Connections the 12, Inc. and Amanda McElhinny, the CCDCFS social worker assigned to the Benoit case. Amanda McElhinny testified her involvement with the case began in May 1998. However, she testified CCDCFS first opened a case with Benoit in October 1989, when police responded to a call from Benoit stating someone attempted to break into his home. When the police arrived, they found the children living in deplorable conditions. According to McElhinny, Benoit lacked working utilities, and the police found dog feces, vomit and garbage throughout the house. Based on these conditions, the CCDCFS removed the children from Benoit's care. McElhinny testified CCDCFS provided Benoit with services to assist him in getting his utilities turned on and getting the house cleaned up. Additionally, CCDCFS assisted Benoit in getting beds for the children. CCDCFS returned the children to Benoit and closed the case in January 1990.
CCDCFS re-opened the Benoit case in July 1996 when Benoit left the children in the house without adult supervision. At the time, the oldest of the five children was twelve years old. Again, the police found Benoit's house in deplorable condition. McElhinny reported the house contained broken windows with broken glass on the floors, one mattress for the five children to share, and no food. Upon further investigation, CCDCFS discovered Benoit frequently left the children alone.
McElhinny testified CCDCFS removed the children from Benoit's care and developed a case plan for reunification. The case plan provided Benoit with a parent's aide to work with Benoit on keeping the house clean, budgeting, making grocery lists, and developing appropriate parenting skills. The case plan also required Benoit to attend parenting classes and submit to a drug and alcohol assessment and to follow through with all recommendations made as a result of the assessment. CCDCFS included the alcohol and drug assessment in Benoit's case plan based on information indicating Benoit received a discharge from the army because of his abuse of alcohol.
McElhinny testified the parent's aide began working with Benoit in September 1996. According to McElhinny, Benoit established a good working relationship with the parent's aide and cooperated with the aide's recommendations. Nevertheless, the parent's aide discontinued contact with Benoit in April 1997, preferring to continue his involvement when CCDCFS returned the children to Benoit's care. Regarding the alcohol and drug assessment, McElhinny testified Benoit participated in the assessment as required and that the assessment did not result in treatment recommendations. However, Benoit failed to successfully complete his parenting classes as required. McElhinny stated Benoit possessed a poor attendance record and failed to cooperate with instructors on the occasions when he came to class. McElhinny testified Benoit stopped attending parenting classes in June 1997 when he fled to Louisiana to avoid a pending rape charge in Ohio. The parenting class provider dropped Benoit from the class in August 1997 for lack of participation.
McElhinny testified law enforcement apprehended Benoit in Louisiana staying with relatives. However, McElhinny indicated the relatives appeared to have been unaware of Benoit's fugitive status. Law enforcement returned Benoit to Ohio in September 1997. McElhinny testified Benoit has been incarcerated since his return to Ohio.
McElhinny testified that when CCDCFS removed the children from Benoit's care in 1996, they placed them in foster care. At the time of the initial foster care placement, CCDCFS investigated placing the children with Plushette Blade's relatives. However, Blade's mother stated she could not care for the children. Blade's sister volunteered to care for the children; however, CCDCFS considered her home inappropriate because she had a child of her own and only has a two bedroom house for six kids. No other maternal relatives came forward.
While in foster care, the three youngest children made disclosures that suggested Benoit subjected the children to sexual abuse. The children made the first disclosures in September 1996. According to McElhinny, Cynthia, who was six years old at the time, alleged Benoit touched her vagina and she touched his genitals. McElhinny revealed information disclosed by the minor child Jessie. In the disclosures, Jessie indicated he had been whooped by Benoit when Jessie refused Benoit's sexual advances. Jessie also told McElhinny that when he was four years old, he touched Benoit. McElhinny testified the two oldest children made no disclosures of sexual abuse. Based on the younger children's allegations, CCDCFS facilitated additional interviews and medical examinations of the children. McElhinny stated the medical examination found no evidence to support the children's claims. Nevertheless, the CCDCFS social worker assigned to the case in 1996 considered the children's allegations credible. McElhinny testified CCDCFS referred the matter to the police for further investigation; however, the police brought no charges against Benoit with regard to the children.
McElhinny testified CCDCFS placed all five children in counseling to address issues of sexual acting out behavior, physical abuse (based on Henry's statement that dad whooped me), and abandonment. Additionally, CCDCFS asked that Henry be assessed as a sexual offender. Further, CCDCFS required the three younger children to sleep in separate rooms.
McElhinny also testified regarding the children's experience in foster care. McElhinny testified CCDCFS separated the children, placing the two oldest together in one foster home and the three youngest together in another. McElhinny indicated the children's initial adjustment to foster care was unsuccessful. The children resisted their foster parents' authority and neither of the two older children performed well in school. However, McElhinny indicated the children have developed a good relationship with their current foster parents and have made significant improvement in their educational performance.
Additionally, McElhinny testified to CCDCFS' efforts to place the children with Benoit's relatives in Louisiana. McElhinny stated Benoit's relatives volunteered to care for the children following Benoit's capture in September 1997. Benoit's sister, Gloria Forman and her husband volunteered to care for the two oldest children, Kunhwa and Jacques. Benoit's other sister, Wilda Sue Rodriguez and her husband volunteered to care for the two youngest boys, Henry and Jessie; and Benoit's nephew, Joseph Rodriguez and his wife volunteered to care for Cynthia. A home study conducted by Louisiana authorities approved the homes for placement. McElhinny testified she accompanied the children to Louisiana for four-day visit. According to McElhinny after staying two nights with her relatives, Kunhwa asked to spend the remaining time at the hotel with McElhinny because Kunhwa claimed the relative's home was dirty. McElhinny expressed no concerns regarding the condition of the homes or the relatives' ability to care for the children. However, McElhinny stated she found the living arrangements unsatisfactory. At Wilda Sue Rodriguez's home, Henry and Jessie would have to share a bedroom with Rodriguez's adopted son who had muscular dystrophy. McElhinny felt this arrangement was inappropriate given Henry and Jessie's sexually aggressive behavior and the adopted son's inability to protect himself from the two younger boys. McElhinny did not approve of the living arrangements at Joseph Rodriguez's home because Cynthia would have to share a room with Joseph's daughter, who had special needs or share a room with their son until the family bought a larger home or built an addition to the existing home. Consequently, McElhinny stated she did not approve of the relatives as suitable placements for the children.
Paula Risdale testified Kunhwa and Jacques came into her foster care system in July 1998. She indicated the children's two previous placements had been unsuccessful. In their current placement they share a home with four other children. She said Kunhwa and Jacques got along well with the other children and indicated Kunhwa and Jacques adjusted well to their placement. Kunhwa received excellent grades and Jacques improved his grades significantly. Further, Kunhwa and Jacques got the opportunity to visit with their younger siblings at least once a month. Risdale stated the foster parents CCDCFS approved the foster parents as an adoptive home and they would be willing to accept the three younger children as well. However, Risdale agreed the children should be placed with relatives if possible.
Jessie Benoit called four witnesses Gloria Forman, Joseph Rodriguez, Marilyn Rodriguez and Brent Richards. Gloria Forman testified she was Jessie Benoit's sister. She wanted to care for the two oldest children, Kunhwa and Jacques. Forman indicated she owned a three-bedroom home and that both Kunhwa and Jacques would have their own room. She stated the children would attend a nearby high school that offered a number of after school activities including baseball, football, track and skating. Forman stated the children would attend catholic church.
Forman testified her sister and brother in law, Wilda Sue and Joseph Rodriguez, wanted custody of Henry and Jessie. Forman testified Rodriguez's fifteen-year-old son named Don had muscular dystrophy, but indicated Rodriguez had full time assistants to help care for her son and would have ample time to devote to the two younger boys. She stated the two younger boys would share a room with Don, but added her sister was willing to add a room to the house if needed.
Joseph Rodriguez, Jessie Benoit's nephew, testified he and his wife Marilyn wanted custody of Cynthia. He testified he had two children, a son and a daughter. He stated his daughter was autistic and wore restraints to prevent her from harming herself. He indicated she did not pose a danger to his son or any other children. He testified that Cynthia would share a room with his daughter and his son would sleep in the living room until they built an addition to the house or bought a larger one.
Marilyn Rodriguez testified she looked forward to taking care of Cynthia. She stated Louisiana family services approved all three homes for placement. Rodriguez also testified she would be willing to comply with any restrictions placed on Jessie Benoit with regard to the children.
Brent Richards, a Chaplin with the City Mission in Cleveland, testified the city mission served as a halfway house for newly released prisoners. He stated the mission provided the former prisoners with housing and assisted them in finding employment to make a successful transition from custody to freedom. He indicated Jessie Benoit was approved for placement with the mission upon his release from custody.
After hearing the testimony, the trial court asked the guardian ad litem (GAL) to submit his report. The GAL stated he needed to review his notes. He indicated he would submit his report to counsel and the court following his review. The GAL filed his report with the trial court on February 5, 1999.
Upon receiving the GAL's report, the trial court issued its order and opinion granting CCDCFS permanent custody of the children. The trial court's order stated:
 THE COURT HEARD EVIDENCE AND TESTIMONY. UPON DUE CONSIDERATION THEREOF, THE COURT FINDS THAT THE ALLEGATIONS OF THE MOTION HAVE BEEN PROVEN BY CLEAR AND CONVINCING EVIDENCE.
 COURT MARKS THE MATTER HEARD SUBMITTED PENDING RECEIPT OF WRITTEN RECOMMENDATION OF GUARDIAN AD LITEM.
 THIS MATTER CAME ON FOR DISPOSITION THIS 5TH DAY OF FEBRUARY 1999 UPON THE RECEIPT OF THE WRITTEN REPORT AND RECOMMENDATION OF GUARDIAN AD LITEM TOM KONET. UPON DUE CONSIDERATION, IT IS ORDERED THAT THE ORDER HERETOFORE MADE IN THIS MATTER COMMITTING THE CHILDREN TO THE TEMPORARY CUSTODY OF THE MOVANT IS NOW TERMINATED. THE CHILDREN ARE COMMITTED TO THE PERMANENT CUSTODY OF THE CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES FOR THE PURPOSES OF ADOPTION.
CLEVELAND SCHOOL DISTRICT TO BEAR COSTS OF EDUCATION. The trial court journalized its order on February 5, 1999. Benoit appealed.
Benoit raises four assignments of error on appeal. To facilitate our review, we address his assignments out of sequence. Because we find Benoit's second and third assignments of error have a similar basis in law and fact, we address them together. In his second and third assignments of error, Benoit argues the trial court erred when it committed the children to the permanent custody of CCDCFS without first making the findings required by law. We agree.
In order to justify termination of parental rights and award permanent custody of a child who is neither abandoned nor orphaned to a public children's services agency, a juvenile court must find by clear and convincing evidence that: (1) the grant of permanent custody to the agency is in the best interest of the child; and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In re Patterson, (Sep. 1, 1999), Summit App. No. 19276, unreported, citing In re William S. (1996), 75 Ohio St.3d 95,99, 661 N.E.2d 738. Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re King, (Aug. 11, 1999), Adams App. No. 99CA671, unreported, citing In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, 481 N.E.2d 613; Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. See also Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121, 122,568 N.E.2d 1222.
The standard of review for weight of the evidence issues, even where the burden of proof is `clear and convincing,' retains its focus upon the existence of some competent, credible evidence. Hawn v. Pleasant, (May 28, 1999), Scioto App. No. 98CA2595, unreported, citing State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. Therefore, when the court reviews awards of permanent custody to public children services agencies, judgments supported by some competent, credible evidence must be affirmed. In re Thomas (Mar. 9, 2000), Cuyahoga App. Nos. 75330, 75331, 75332, unreported; In re Rowe, (Jan. 30, 1998), Scioto App. No. 97CA2529, unreported; see, also, Jones v. Lucas County Children Services Board (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471.
R.C. 2151.414 sets forth the factors a trial court must consider in determining the best interest of a child and whether a child cannot be placed with his parents. Factors the court must consider in determining the best interest of a child include, but are not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.414(D). Factors the court must consider in determining whether a child cannot be placed with either parent are enumerated in R.C. 2151.414(E) which provides:
 (1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (6) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing;
* * *
 (8) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
R.C. 2151.414(E). Once a court determines, by clear and convincing evidence, one of the enumerated factors exists, the court must enter a finding that the child cannot or should not be placed with either of his parents within a reasonable time. In re Shanequa H. (1996),109 Ohio App.3d 142; In re Higby (1992), 81 Ohio App.3d 466. Additionally, the trial court must determine whether CCDCFS made reasonable efforts to do any of the following: (a) [p]revent the removal of the child from the child's home; (b) [e]liminate the continued removal of the child from the child's home; (c) [m]ake it possible for the child to return home. Juv.R. 27(B)(1).
A review of the record reveals there was competent, credible evidence upon which the trial court could determine granting permanent custody of the children to CCDCFS is in the best interest of the children and that the children could not and should not be placed with either parent within a reasonable time. The evidence demonstrated the children's natural mothers failed to maintain contact with the children over a period of several years. Kunhwa's and Jacques' mother apparently abandoned the children when the family lived in Colorado and her whereabouts have been unknown since 1988. Henry, Jessie and Cynthia's mother has been in and out of prison. Her last contact with the children was made in 1998 and her current whereabouts are unknown. Benoit failed to complete his case plan and is currently serving a multi-year prison term for rape.
Additionally, the record demonstrates CCDCFS made reasonable efforts to prevent the removal of the children from the home. CCDCFS developed a case plan to reunify Benoit and the children. CCDCFS provided Benoit with assistance in getting his utilities turned on and getting the house cleaned up. CCDCFS also helped Benoit to get beds for the children and provided Benoit with a parent's aide to assist him in developing appropriate parenting skills.
We conclude the record in this case provides ample support for the decision to terminate parental rights and award permanent custody to CCDCFS. The trial court could have properly found the children could not be placed with either parent within a reasonable time and that a grant of permanent custody to CCDCFS was in the children's best interest. The trial court could also have determined CCDCFS made reasonable efforts to prevent the children's removal from the home. However, the trial court failed to make these mandatory findings in its entry granting CCDCFS custody. Accordingly, we vacate the journal entry and reinstate the order granting temporary custody of the children to CCDCFS pending journalization of an entry comporting with the requirements of R.C.2151.414; and remand. See In Re Breslav (April 13, 2000), Cuyahoga App. No. 75468, unreported.
In Benoit's fourth assignment of error, he argues the court's acceptance of the guardian ad litem's report seven days after trial violated his right to due process and the statutory requirements of R.C.2151.414(C). However, Benoit failed to raise this issue with the trial court. Where a party does not object to the failure of the guardian ad litem to submit a report in accordance with the requirements of R.C.2151.414(C), the error is waived. See Inre Keltner (Aug. 10, 1998), Butler App. No. CA 97-10-188, unreported; In Re Cordell (April 2, 1992), Cuyahoga App. No. 60049 and 60050, unreported. Accordingly, we overrule Benoit's fourth assignment of error.
In Benoit's first assignment of error he argues the trial court erred in awarding permanent custody to CCDCFS contrary to the children's best interest where his relatives offered suitable permanent homes. Specifically, Benoit argues none of the best interest factors enumerated in R.C. 2151.414(D) supports the court's grant of custody to CCDCFS. We disagree.
For example, the record indicates the children lacked any meaningful relationship with their relatives from Louisiana. The children spoke with the relatives over the phone once a year and ha d actually seen them no more than three times during their lives. While the wishes of the younger children do not appear in the record, the eldest child expressed a strong desire to remain in Ohio with her foster care family. Further, the record contains testimony the foster parents of the two oldest children were considering adoption of the three younger siblings. As noted above, we conclude there is ample evidence in the record to support a finding that awarding permanent custody to CCDCFS is in the best interest of the children. Accordingly, we overrule Benoit's first assignment of error.
Judgment is affirmed in part and reversed in part, and remanded for further actions consistent with this opinion. remanded.
It is ordered that appellant and appellee share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas, Domestic Relations Division to carry this judgment into execution.
DIANE KARPINSKI, P.J., and JOHN T. PATTON, J., CONCUR.
 _____________________________ PATRICIA ANN BLACKMON, JUDGE