This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Ioma Carroll, has appealed from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child, Terrence Carroll. This Court affirms.
 I.
Carroll gave birth to Terrence on March 2, 1994. Within the next year, Carroll began using crack cocaine on a regular basis. Carroll was eventually using crack several times daily. She was not feeding or grooming Terrence adequately, did not send him to school on a regular basis, and he lived in a filthy home surrounded by drug activity. Terrence was biting and kicking children at school but Carroll did nothing to address the problem.
On June 13, 2000, Carroll voluntarily placed Terrence in the custody of her sister, Ola Carroll. Terrence was adjudicated dependent and neglected on September 13, 2000, and placed in the temporary custody of Ola Carroll, subject to the protective supervision of Lorain County Children Services ("LCCS"). Terrence was later removed from Ola Carroll's home and placed with a foster family due to concerns by LCCS that Ola Carroll also had a substance abuse problem and was neglecting Terrence. LCCS moved for permanent custody of Terrence on January 30, 2001. Following a hearing on the motion, the trial court terminated Carroll's parental rights and placed Terrence in the permanent custody of LCCS. Carroll timely appealed, asserting one assignment of error.
 II. ASSIGNMENT OF ERROR The order of the trial court granting permanent custody of Terrence [Carroll] to Lorain County Children Services was against the manifest weight of the evidence.
When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), Summit App. No. 18983, unreported, at 3. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati (1988),38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Id.
Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994),96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, who is not abandoned, orphaned, nor has been in the temporary custody of the agency for at least twelve months of the prior twenty-two months period, it must find by clear and convincing evidence that (1) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C.2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C.2151.414(D). See R.C. 2151.414(B)(1); see also, In re William S. (1996),75 Ohio St.3d 95, 99. Carroll argues that the trial court did not have clear and convincing evidence before it to support its finding that Terrence cannot be placed with her within a reasonable time or should not be placed with her.
When determining whether the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, the juvenile court must find by clear and convincing evidence that at least one of the enumerated factors in R.C. 2151.414(E) exists as to each of the child's parents. Those factors include:
 (1) Following the placement of the child outside the child's home * * *, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *[;]
 (2) Chronic * * * chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year * * *[.]
R.C. 2151.414(E). The juvenile court should consider all relevant evidence when making such a determination. Id. If the court finds that any of the conditions enumerated in R.C. 2151.414(E) exist, the statute mandates that the court enter a finding that the child cannot or should not be placed with either parent within a reasonable time. In re Higby
(1992), 81 Ohio App.3d 466, 469.
Carroll's abuse of crack cocaine was the primary problem that led to the removal of Terrence from her home and prevented his return. Carroll exhibited many symptoms that drug addiction was greatly affecting her ability to provide an adequate home for Terrence. Carroll had no regular employment and no permanent home. There was evidence that, while living with Carroll, Terrence was not properly fed or groomed, he slept on a mattress on the tiled floor of the living room, the house was filthy, and the utilities were often not working. The caseworker observed a broken window in the home, and explained to Carroll that it posed a danger and needed to be repaired, but Carroll did not address that problem or other concerns raised by the caseworker.
Carroll's cocaine habit had invaded her home and Terrence was surrounded by it. While Terrence was with his mother, she used crack cocaine numerous times daily. Dark curtains covered the windows, apparently to prevent outsiders from looking in, which kept the house dark and did not allow light to come in. The neighbors had complained about the many people coming and going from the home. In fact, Terrence referred to his mother as "Tudy," which is her street name.
Carroll failed to send Terrence to school on a regular basis. While Terrence was living with her, he missed sixty-four days of school during a single school year. Terrence also exhibited behavior problems at school, including biting and kicking other children without provocation. Although the school had sent Carroll numerous letters addressing Terrence's problems, she failed to take any action.
Carroll's caseworker once arrived at Carroll's home and caught her in the act of smoking crack, apparently because someone else had answered the door and allowed the caseworker to come in. The caseworker testified that Carroll was hostile and aggressive toward her and that she "thought she was going to attack" her. Carroll admitted that she continued using crack throughout the eight-month period that the caseworker worked with her on a case plan. The caseworker often observed Carroll in an agitated state and she attributed that to the crack habit. During visits with Terrence, Carroll would often scold or even slap him for no apparent reason.
By her own admission, Carroll had been using crack cocaine for six years. The primary goal of her case plan was to establish a sober lifestyle, free from all forms of substance abuse. To achieve this goal, she was required to complete an intensive outpatient treatment program, among other things, and, if deemed necessary, an inpatient treatment program. Although Carroll enrolled in one inpatient treatment program in June 2000, she did not complete the program. Carroll has started, but failed to complete, several treatment programs during the past few years. Her caseworker attempted to enroll her in other programs, but Carroll refused further treatment. At that time, she admitted to her caseworker that she used crack regularly but denied that she had a "problem."
By the time of the hearing on April 30, 2001, however, she described her drug abuse as a "deep problem" and indicated that, up until a few months before the permanent custody hearing, she was using crack "[e]very day; morning, noon, and night." Carroll indicated that, at the time of the hearing, she was still using crack regularly, but only twice a week. The gist of her testimony was that she had finally realized that she had a drug problem, that the frequency of her drug use had diminished, and she was ready to start treatment. She presented evidence that she was on a waiting list to be admitted to an intensive outpatient treatment program. There was no evidence of how long she would have to wait to begin treatment.
The fact remained, however, that Carroll had not even started intensive drug treatment and she has a history of failing to complete drug treatment programs. She has started, yet failed to complete, several programs in the past. LCCS had been working on a case plan with Carroll for eight months prior to the permanent custody hearing. Throughout that period, Carroll continued using crack cocaine on a regular basis, denying she had a problem, and refusing to complete an intensive treatment program that had been deemed necessary as the first step toward conquering her long-term drug addiction. At the hearing, for apparently the first time, she was admitting to LCCS that she had a problem and that she was ready to begin an intensive outpatient treatment program. Although she may have demonstrated that she was willing to take the first step toward sobriety, she had not yet taken even that first step. Because she was merely on a waiting list, of indefinite duration, it is unknown when she will be able to begin this treatment.
The trial court had ample evidence before it from which it could find that Carroll failed to substantially remedy the conditions that caused Terrence's removal and that her chronic substance abuse prevented her from providing Terrence with an adequate permanent home now or within one year. R.C. 2151.414(E)(1) and (2). Therefore, the trial court was required to find that Terrence could not or should not be placed with Carroll within a reasonable time.
Carroll has failed to demonstrate that the trial court erred in granting permanent custody of Terrence to LCCS. The assignment of error is overruled.
 III.
The assignment of error is overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BETH WHITMORE, BAIRD, P.J., CARR, J. CONCUR.