This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant ("Mother")[1] appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights to two of her children and placed them in the permanent custody of Lorain County Children Services ("LCCS"). This Court affirms.
{¶ 2} Mother is the natural mother of three children, a son, born February 11, 1995, a son, born September 9, 1996, and a daughter born July 20, 1999. The daughter is in the legal custody of the maternal grandmother and is not at issue in this appeal. The father of the children is also not at issue in this appeal. Because Mother's two sons have the same initials, this Court will refer to them collectively as "the children."
{¶ 3} Mother and her family first became involved with LCCS due to reports of neglect during March of 2000 but the children were allowed to remain in their mother's care at that time under LCCS protective supervision. Following an incident in October, however, the children were removed from the home. Mother left the children overnight with a teenaged babysitter so that she could go out with a friend. When she still had not returned at noon the next day, the babysitter's parent called the police, who contacted LCCS.
{¶ 4} The primary concerns of LCCS about Mother were her abuse of alcohol, her mental health issues, her failure to adequately supervise her young children, and the dirty condition of her home. Consequently, the case plan required Mother to follow through with treatment recommendations for her problem with alcohol abuse, complete a mental health assessment and follow through with any recommendations, complete a parent education program, and maintain safe and stable housing for her family and be prepared to meet its basic needs.
{¶ 5} LCCS moved for permanent custody of the children on December 18, 2001, contending that Mother had failed to substantially remedy these problems. Following a hearing held April 1, 2002, the trial court granted the motion and placed the children in the permanent custody of LCCS. Mother appeals and raises one assignment of error.
 ASSIGNMENT OF ERROR {¶ 6} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND IN VIOLATION OF O.R.C. 2151.414, THE FOURTEENTH AND NINTH AMENDMENTS TO THE UNITIED STATES CONSTITUTION, AND ARTICLE I, SECTION 1 OF THE OHIO CONSTUTUTION, WHEN IT TERMINATED THE PARENTAL RIGHTS OF APPELLANT AND GRANTED PERMANENT CUSTODY OF THE MINIOR [CHILDREN] TO LORAIN COUNTY CHILDREN SERVICES, WHERE THE EVIDENCE FAILED TO SATISFY THE REQUISITE STANDARD OF PROOF."
{¶ 7} Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. Inre Wise (1994), 96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, who is not abandoned or orphaned, it must find by clear and convincing evidence that (1) either (a) the child has been in the temporary custody of the agency for at least twelve months of the prior twenty-two months period, or (b) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2). Mother contends that the trial court did not have clear and convincing evidence before it on either of the two prongs of the test.
{¶ 8} The trial court found that the children had been in the temporary custody of LCCS for more than twelve of the past twenty-two months and that finding was supported by the record. According to R.C.2151.414(B)(1),
 {¶ 9} "[A] child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
{¶ 10} The children were adjudicated dependent and neglected, pursuant to R.C. 2151.28, on September 1, 2000. The permanent custody hearing was held April 1, 2002. Thus, at the time of the hearing, the children had been in the temporary custody of LCCS for seventeen months. Consequently, the first prong of the permanent custody test was satisfied.
{¶ 11} The trial court also found, however, that the first prong of the permanent custody test was satisfied by LCCS proving that the children could not or should not be returned to their mother. When determining whether the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, the juvenile court must find by clear and convincing evidence that at least one of the enumerated factors in R.C. 2151.414(E) exists as to each of the child's parents. The juvenile court should consider all relevant evidence when making such a determination. Id. If the court finds that any of the conditions enumerated in R.C. 2151.414(E) exist, the statute mandates that the court enter a finding that the child cannot or should not be placed with either parent within a reasonable time. In re Higby
(1992), 81 Ohio App.3d 466, 469.
{¶ 12} The trial court found that LCCS had established the following factor in this case:
 {¶ 13} "Following the placement of the child outside the child's home * * *, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *[.]" R.C. 2151.414(E)(1).
{¶ 14} The children were initially removed from Mother's home due to Mother's inadequate supervision of them, the dirty condition of her home, and her abuse of alcohol. To remedy these problems, Mother was required to, among other things, follow through with substance abuse treatment recommendations, complete a parent education program, and maintain safe and stable housing for her family. During the coming months, Mother attempted suicide and LCCS added the requirement to the case plan that Mother complete a mental health assessment and follow through with any treatment recommendations.
{¶ 15} At the permanent custody hearing, the evidence established that Mother had failed to substantially remedy any of these problems. Mother's caseworker testified that she did not voluntarily follow through with substance abuse treatment. The caseworker testified that he had met with or called Mother on at least forty occasions about her failure to follow through with treatment. He repeatedly made referrals, offered her transportation if she needed it, but she failed to follow through with treatment on her own. Mother voluntarily entered one treatment program but was discharged due to noncompliance.
{¶ 16} The October 2000 incident that led to the removal of these children, Mother leaving them overnight with a teenaged babysitter and failing to return by noon the next day, also led to a criminal conviction for child endangerment. Mother was placed on probation. Nearly one year later, she was arrested for a probation violation, because she was found at a tavern. As a result, she was incarcerated for three months. During her incarceration, Mother was required to participate in an alcohol treatment program, which she did. She admitted during the permanent custody hearing, however, that she had completed the program not as a means of getting her children back but because she was required to do so.
{¶ 17} Mother had also failed to substantially remedy the other conditions that led to the removal of the children. By the time of the permanent custody hearing, seventeen months had elapsed since LCCS filed its first case plan. Mother had completed a mental health assessment but she did not begin the recommended treatment until a few months before the hearing and she had not been consistent with attending counseling or taking the recommended medication. Although Mother had signed up for parenting classes, at the time of the hearing, she had not yet taken a single class. She had also failed during this time to secure employment or housing.
{¶ 18} Mother testified that she had spoken to a friend about a job, indicating that she would get that job, and that she was on a waiting list for housing. She testified that, if she had three more months, she could start working, secure housing, and would be able to support and care for her children. Her caseworker, who had worked with her throughout the past seventeen months and testified to her history of failing to follow through with what she said she would do, indicated that he did not believe that Mother would be able to have her children returned to her any time in the foreseeable future. Given the evidence before the trial court, it was reasonable for the trial court to believe the caseworker's opinion that Mother would not be ready to have the children returned to her in the foreseeable future. Consequently, this evidence clearly demonstrated that Mother had failed to substantially remedy the conditions that caused the removal of her children.
{¶ 19} To satisfy the best interest prong of the permanent custody test, LCCS was required to establish, by clear and convincing evidence, that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C.2151.414(B)(1). See, also, In re William S. (1996), 75 Ohio St.3d 95,97-98. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
 {¶ 20} "[C]onsider all relevant factors, including, but not limited to, the following:
 {¶ 21} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 22} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 23} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 {¶ 24} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4)[2].
{¶ 25} The following relevant evidence was presented at the hearing. Mother had weekly visitation with the children from the time they were removed from the home. According to the caseworker, Mother attended visits on a fairly regular basis and there is a bond between Mother and her children. He also noted, however, that her interaction with the children was not always appropriate. The caseworker testified that he attempted to correct her behavior but she was not always receptive to his suggestions. There is also evidence in the record that visits were supervised because Mother had threatened to take the children.
{¶ 26} At the time the children came into LCCS custody, each exhibited a variety of behavior and other psychological problems. Each child had been in counseling and, although LCCS offered Mother the opportunity to participate in their counseling, she did not do so.
{¶ 27} The children have shown marked improvements while in foster care. The caseworker had observed the children with their foster mother and indicated that they appeared to be attached to her. The caseworker also observed that the foster mother is capable of controlling their behavior and meeting their needs. The foster mother is committed to continuing the children's counseling and she has expressed a desire to adopt both of them.
{¶ 28} The guardian ad litem expressed her opinion that permanent custody was in the best interest of the children because Mother was not in a position to provide the children with a permanent placement. The guardian ad litem did indicate to the court that the children had told her that they wanted to return to their mother, but the trial court had to consider the fact that they were only five and seven years old at the time.
{¶ 29} For purposes of R.C. 2151.414(D), which includes language similar to R.C. 2151.414(B) quoted above, the children had been in the temporary custody of LCCS for seventeen months, well over twelve of the twenty-two months prior to the hearing. During that time, Mother exerted little effort toward reunification. As she admitted at the permanent custody hearing, it was not until she was incarcerated, well over a year after the children were removed from her home, that she realized that she needed to change her life. During that time, although she visited with her children fairly regularly, the visits never progressed beyond weekly visits.
{¶ 30} Prior to the children coming into LCCS custody, they lived with their mother. By Mother's own testimony, after her husband left the family in September of 1999, one year before the children were taken from her home, she started to abuse alcohol. Mother also testified that, when her husband was living with the family, he was abusive and she had to protect the children from him. When the children were first removed from the home, they exhibited aggressive behavior and inappropriate sexual behavior, which was being dealt with through counseling.
{¶ 31} The caseworker testified that the children were in need of a permanent placement and that Mother could not provide it. LCCS had pursued possible placements with relatives but none were available. LCCS had discussed placement with the maternal grandmother, who has legal custody of Mother's youngest child, but she was not willing to take these two children. The foster mother had expressed a desire to adopt the children and adoption would only be possible if LCCS received permanent custody.
{¶ 32} Taking into consideration all of these factors, there was ample evidence before the trial court from which it could conclude that permanent custody to LCCS was in the best interests of these children.
{¶ 33} Mother also raises two sub-issues under this assignment of error:
 {¶ 34} "A. THE TRIAL COURT'S DECISION ADJUDICATING THE MINOR CHILD DEPENDENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 35} "B. OHIO REVISED CODE SECTION IS UNCONSTITUTIONAL AS APPLIED IN THAT IT CREATES AN IRREBUTABLE PRESUMPTION."
{¶ 36} First, Mother contends that the trial court did not have ample evidence to adjudicate the children dependent and neglected. Mother makes no legal argument in her appellate brief on this issue, however. Moreover, the adjudication of dependency and neglect was made by a magistrate and was later adopted by the trial court. Mother filed no objections to the magistrate's adjudication, however, thus waiving her right to raise the issue on appeal. See Juv.R 40(E)(3)(b).
{¶ 37} Next, Mother challenges the constitutionality of R.C.2151.414(B)(1)(d), which allows the agency to establish the unsuitability of a parent by the fact that the child remained in the temporary custody of the agency for twelve consecutive months during the twenty-two months preceding the hearing. She contends that this provision deprived her of her constitutional right to raise her children without requiring the State to establish her unfitness.
{¶ 38} This Court will not reach the merits of this challenge, however, because Mother raises it for the first time on appeal. There is nothing in the record to indicate that Mother raised this constitutional issue at the permanent custody hearing or anytime prior to the trial court's ruling on the permanent custody issue. Generally, an appellate court will not consider any error that could have been, but was not, called to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. Childs
(1968), 14 Ohio St.2d 56, paragraph three of the syllabus. Specifically, the "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986),22 Ohio St.3d 120, syllabus.
{¶ 39} The assignment of error is overruled.
{¶ 40} Judgment affirmed.
WHITMORE, J., BATCHELDER, J. CONCUR.
[1] Appellant has not been named to protect the identity of her children.
[2] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.