Appellant, Joni James ("Appellant James") and Appellant, Kevin Chapman ("Appellant Chapman"), have appealed from the order of the Summit County Court of Common Pleas, Juvenile Division, granting permanent custody of Sha'Ron James, Azane Chapman, and Caira Chapman to Appellee, the Summit County Children Services Board ("CSB"). Sha'Ron James, Azane Chapman, and Caira Chapman, are the children of Appellants. We affirm.
Sha'Ron was born on February 28, 1997. Both Appellant James and Sha'Ron tested positive for cocaine at the time of Sha'Ron's birth. As a result, on May 1, 1997, Sha'Ron was adjudicated a dependent child by the Portage County Juvenile Court. On December 26, 1997, Portage County ordered the return of custody to Appellant James with an order of protective supervision.
On February 21, 1998, Azane Chapman was born. On March 16, 1998, Azane and Sha'Ron were placed in the temporary custody of CSB after the police were called to the home due to an altercation between Appellant James and Ms. Reynolds, the children's paternal grandmother with whom they had been living. During the altercation Appellant James was intoxicated and Ms. Reynolds insisted that she and the children leave the home. Following the altercation, Appellant James became hostile with the police and threw Azane across the room. The baby was caught by an uncle before she hit the floor. Following the altercation, the police confiscated a grocery bag and a half of marijuana from the home that had been concealed inside the diaper bag. Appellant was arrested and charged with child endangering and domestic violence. She was subsequently convicted of both counts. As a result of the incident, Azane was adjudicated an abused child. Following this altercation, Portage County Children Services Board transferred Sha'Ron's case to Summit County to facilitate case management and to assist in keeping the children together.
On July 10, 1999, Appellants gave birth to a third child, Caira Chapman. Caira was taken into custody by CSB at birth. Caira was placed with the same foster family that was keeping Sha'Ron and Azane.
On July 7, 1999, CSB moved for permanent custody. On December 3, 1999, a hearing was held on the permanent custody matter. After hearing the testimony of numerous witnesses, the parties agreed to continue the matter in order to permit the parties greater time to comply with their individual and joint case plans. On May 24, 2000, a second hearing was held on CSB's motion for permanent custody. On June 28, 2000, the trial court granted CSB's motion for permanent custody and terminated the parental rights of Appellants.
Appellants each timely appealed. This court consolidated the cases for the purposes of briefing and oral argument. Appellant James presented two assignments of error for review while Appellant Chapman presented three assignments of error for review.[1] The parties' assignments of error have been consolidated for ease of discussion.
APPELLANT JAMES' ASSIGNMENT OF ERROR I
 The trial court erred in finding that it is in the minor children's best interest that they be placed in the permanent custody of CSB as this finding was not supported by clear and convincing evidence.
APPELLANT JAMES' ASSIGNMENT OF ERROR II
 The trial court erred in granting CBS's motion for permanent custody thereby terminating the parental rights of Appellant James as the trial court's findings are against the manifest weight of the evidence which could lead to only one conclusion that being contrary to the judgment of the trial court.
APPELLANT CHAPMAN'S ASSIGNMENT OF ERROR I
 The Trial Court committed error when it granted [CSB's] Motion for Permanent Custody and terminated the parental rights of [Appellant Chapman] because the decision is against the manifest weight of the evidence.
In Appellant James' two assignments of error and in Appellant Chapman's first assignment of error, Appellants have argued that the trial court erred by granting CSB's motion for permanent custody. Specifically Appellants have argued that the trial court's findings are not supported by clear and convincing evidence and are against the manifest weight of the evidence. We disagree.
This court applies the same standard in determining whether both criminal and civil judgments are against the manifest weight of the evidence. Lagasse v. Yaeger (Sept. 9, 1998), Lorain App. No. 97CA006774, unreported, at 3; Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. Therefore we:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.
(alteration in original) Lagasse, supra, at 4, quoting State v. Otten
(1986), 33 Ohio App.3d 339, 340. In effect, an appellate court which overturns a judgment on manifest weight of the evidence grounds adopts a fact-finding role, setting aside the resolution of evidence and testimony as found by the trier of fact. See State v. Thompkins (1997),78 Ohio St.3d 380, 387. This action is reserved for the exceptional case, where the evidence weighs heavily in favor of the appellant. SeeState v. Otten, 33 Ohio App.3d at 340.
Termination of parental rights is sanctioned when necessary for the welfare of a child but is an "alternative of last resort." In re Wise
(1994), 96 Ohio App.3d 619, 624. Termination of parental rights in the situation where a child is not orphaned or abandoned is governed by R.C.2151.414(B)(1), which provides:
 [T]he court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
This is a two-part inquiry, requiring courts to determine whether, "by clear and convincing evidence[,] * * * both: (1) the grant of permanent custody to the petitioning agency is in the best interest of the child, and, (2) the child cannot or should not be placed with either parent within a reasonable time." In re Higby (1992), 81 Ohio App.3d 466, 468.
In Appellant James' first assignment of error, she has contested the court's finding with regard to the first prong of this test. Appellant James argued that the trial court's judgment that permanent custody was in the best interest of her children was against the manifest weight of the evidence. We disagree.
R.C. 2151.414(D) provides that in determining the best interests of a child, a court should consider all relevant factors, including but not limited to:
 (1) The interaction and interrelationship of the child with the child's parent, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * * ;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
Upon review of the evidence, it is clear that the record supports that the children's best interests could only have been served through the granting of permanent custody to CSB. Upon review of the procedural history of this case, it is clear that all three children have spent almost their entire lives in the custody of CSB due to various problems with Appellants. Sha'Ron was originally removed for testing positive for cocaine following birth. While he was returned to his parents' custody for a few brief months, following the incident with Azane, he was again removed. Azane was only three weeks old when removed by CSB and has remained in their custody ever since. Caira has never been in the custody of her parents as she was removed by CSB immediately following her birth. In all instances, the children have spent more than the required twelve months out of the last twenty-two in the care and custody of CSB.
In addition to the fact that the children spent an extensive amount of time in the custody of CSB, review of the children's relationship with their parents and the bonding between them reveals that it is in the best interests of the children that they be placed in the custody of CSB. There was testimony given at the hearing that while the children exhibit some limited amount of bonding with their parents, they show a significantly stronger attachment to their foster family. Therefore, the trial court did not err in finding that granting permanent custody of the children to CSB was in the children's best interests.
In Appellant James' second assignment of error and in Appellant Chapman's first assignment of error, they challenged the second prong of the test in which the trial court must establish that the children cannot or should not be returned to either parent within a reasonable amount of time. The evidence shows that the children cannot be returned to either parent within a reasonable amount of time due to the substantial problems with the parents that jeopardize the children's health, safety and welfare. There were numerous areas of concern indicated in the evidence that show that the children would not be able to be safely placed with Appellants, either jointly or separately. Specifically, Appellants have had problems with alcohol and substance abuse, Appellants have issues of domestic violence, Appellants have failed to take any affirmative steps to comply with the caseplan, and Appellants have failed to show an interest in maintaining visitation with their children.
Both Appellant James and Appellant Chapman have exhibited ongoing problems with substance abuse. Pursuant to the caseplan, Appellant James was to "complete alcohol and drug treatment and refrain from alcohol and drugs and drop random urine screens." Appellant James has had several positive drug tests since becoming involved with CSB in 1997. While the case rested with the Portage County Children Services Board, Appellant James tested positive for cocaine usage at the hospital and then subsequently tested positive for marijuana on three separate occasions. During the altercation that resulted in Sha'Ron and Azane being removed from Appellant James' custody, Appellant James was intoxicated and the police confiscated a large quantity of marijuana from Azane's diaper bag. Appellant James denied that the drugs were hers and instead insisted that they belonged to Appellant Chapman. While she has completed a substance abuse program with the Community Drug Board and has continued counseling on her own initiative, throughout the course of the program Appellant James exhibited behavior contraindicative of substantial progress. Appellant James frequently did not drop urine samples as requested by her caseworker. On the rare occasions when she did comply with the requests to drop urine samples, she often did not comply on the day the request was made. While most of the urine screens were negative when dropped, on January 18, 2000, Appellant James tested positive for marijuana.
On April 26, 2000, just prior to the permanent custody hearing, the CSB caseworker assigned to the James/Chapman family conducted an unannounced home visit to Appellant James' residence. Upon his arrival at the home he found Appellant James highly intoxicated. She was sitting with an open, twenty-ounce can of Colt 45 between her legs. Her eyes were glassy and pink and her speech was slurred. There were two bags filled with empty alcohol cans and there was a half empty bottle of brandy on the kitchen countertop.
The incident on April 26, 2000, appears to be indicative of the serious backslide Appellant James was experiencing in the months between the original and the subsequent permanent custody hearings. Following that encounter, Appellant James was arrested for a DUI offense on May 3, 2000. Additionally, on the day of the permanent custody hearing, Appellant James was not in attendance due to the fact that she had checked herself into Edwin Shaw Rehabilitation Center.
Appellant Chapman has also shown signs of problems with substance abuse. Pursuant to his caseplan, he was instructed to complete a chemical dependency assessment and follow the recommendations, refrain from the use of alcohol and drugs, and drop random urines. Appellant Chapman met with the Community Drug Board for an assessment and submitted a urine sample on that date, however, that urine sample tested positive for marijuana. Appellant Chapman then refused treatment with the Community Drug Board and has consistently refused to drop any further urine samples for the purposes of drug and alcohol screening. When questioned about his noncompliance by the caseworker, Appellant Chapman became very hostile and angry.
There are also issues of domestic violence and anger management in the Appellants' home. As noted earlier, there is the incident that took place between Appellant James and Ms. Reynolds, the paternal grandmother, during which Azane was thrown across the room. Additionally, the case worker documented an incident in which Appellant Chapman threw a beer bottle at the car Appellant James was riding in, cracking the windshield. Appellant Chapman then struck Appellant James in the head. The caseworker also noted incidents wherein Appellant Chapman threw Appellant James and the children out of his mother's home rendering them homeless. Appellant James attended anger management classes as required in the caseplan, however, Appellant Chapman refused to attend or participate in any such courses. The caseworker indicated that this was of particular concern due to Appellant Chapman's violent history. He had been convicted of two counts of robbery and arrested for assault.
Appellants' attendance at visitations with the children have been sporadic at best. While Appellant James did attend regularly for a short period of time in the end of 1999 and beginning of 2000, following the April 26, 2000, incident neither parent has had any contact with any of the children. Appellant Chapman has not at any point shown a consistency in his visitation with the children. Appellant Chapman argued at the hearing that his lack of attendance was attributable to conflicts with his work schedule, however, at no point did he seek to have the time or day changed to facilitate his visitation.
Upon review of the evidence presented, it is clear that Appellants are unable to provide safe, stable housing for the children. CSB and the Summit County Juvenile Court have given the parties numerous opportunities and assistance to help them achieve the environment necessary to permit the return of the children. However, in spite of this assistance, the parties have either been unable to remedy the problems for an extended period of time or have merely refused to take the steps necessary to remedy the problems. Therefore, in light of the foregoing evidence, it is apparent that the children cannot and should not be placed with either parent within a reasonable time.
After reviewing the record and weighing the evidence, the trial court's order granting permanent custody to CSB was not against the manifest weight of the evidence. Appellant James' two assignments of error and Appellant Chapman's first assignment of error are without merit.
APPELLANT CHAPMAN'S ASSIGNMENT OF ERROR II
 The Trial Court committed error when it found that [CSB] made reasonable efforts as required by O.R.C. Section 2151.419 to return the child to the child's home.
APPELLANT CHAPMAN'S ASSIGNMENT OF ERROR III
 The Trial Court committed error when it found that the Chapman children cannot and/or should not be placed with either parent at this time or in the foreseeable future.
In his second assignment of error, Appellant Chapman has argued that the trial court erred when it found that CSB complied with the mandates of R.C. 2151.419(A)(1). Specifically he has argued that while CSB attempted strenuously to reunify the children with Appellant James, they did not make similar efforts with respect to reunification with him. Similarly, in his third assignment of error, Appellant Chapman has argued that the trial court erred by finding that the children could not be returned to his custody within the foreseeable future. We disagree with both accounts. Because both issues deal with Appellant Chapman's action and inaction with respect to the caseplan up to this point, the assignments of error shall be addressed concurrently.
In his second assignment of error Appellant Chapman points to the mandates of R.C. 2151.419 that require that reasonable efforts be made by CSB to prevent the removal of a child from its home. R.C. 2151.419
provides in part:
 (A)(1) Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. * * * In determining whether reasonable efforts were made, the child's health and safety shall be paramount.
In his third assignment of error, Appellant Chapman points to the requirement of R.C. 2151.414(B)(1)(a) that indicates that in order to terminate parental rights, it must be shown that the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." Appellant Chapman's actions over the course of the three years in which this matter was pending show that reasonable measures were taken to prevent removal of the children from their parents. However, due to the actions of both parents, returning the children to either parent was impossible.
CSB took extensive measures to reunify the children with both parents. Prior to the incident with Azane, CSB was unaware of Appellant Chapman's role as the children's father. As soon as this fact was made known to CSB, they immediately included Appellant Chapman in the caseplan. The caseplan had several requirements geared solely towards reunification of the children with Appellant Chapman. He was instructed to obtain a chemical dependency assessment, follow the resulting treatment instructions, and drop random urine screens upon request. While he completed the initial assessment, Appellant Chapman did not take any step towards completing a treatment program as recommended. The caseplan also required Appellant Chapman to undergo anger management counseling. Appellant Chapman adamantly refused to do anything to comply with this requirement and in fact stated that this was "bullshit." Like Appellant James, Appellant Chapman was instructed to obtain independent and stable housing. Specifically he was told that to comply with this element of the caseplan he would have to move out of his mother's home and provide stable, adequate housing for his children. At the time of the hearing Appellant Chapman was still living with his mother and had been there throughout the course of this case with only a few brief departures in which he lived in a local motel. Finally, Appellant failed to maintain any sort of visitation schedule with the children. He visited only sporadically, at best, and often did not make any attempt to see the children during the time established by CSB.
Appellant has admitted to a total lack of action on his part to comply with the caseplan. He has attempted to explain his inaction by stating that since he thought that Appellant James would comply and get the children returned from CSB's custody, he really didn't need to do anything. In light of Appellant James' backslide with the alcohol and drug dependency problems, he now claims that he should be given additional time to work on his caseplan. Appellant Chapman argued to the trial court that he was ready to "step up to the plate" and do whatever it takes to enable him to regain custody of his children. He argues that the trial court erred by not permitting him additional time in which to do so. In response to his request, the trial court stated "the game has already gone nine innings and the score indicates that there is no need for extra innings." This Court agrees with the trial court's assessment and notes that the trial court did not need to give Appellant Chapman any more than three strikes before placing the children in safe, stable housing. Appellant Chapman has failed repeatedly to make any type of progress on his caseplan requirements despite all assistance offered by CSB. Therefore, it was just to find that reasonable efforts were made to prevent the removal of the children from the home. Appellant Chapman's second and third assignments of error are without merit.
Appellants assignments of error are without merit and they are hereby overruled.
The Court finds that there were reasonable grounds for these appeals.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
 ___________________________ LYNN C. SLABY
BAIRD, P. J., CARR, J., CONCUR.
[1] This Court notes that Appellant James originally presented this Court with a third assignment of error but withdrew said assignment of error in her reply brief due to the fact that the evidence in the record did not support a finding of error.