This expedited matter comes for consideration upon both the record in the trial court and the parties' briefs. Appellant Laura Kashdan (hereinafter "Kashdan") appeals the judgment of the Columbiana Court of Common Pleas, Juvenile Division, granting permanent custody of Kashdan's minor children, Dillon Stephens (hereinafter "Dillon"), Ronald Stephens (hereinafter "Ronald"), and River Stephens (hereinafter "River") to the Columbiana County Department of Human Services (hereinafter "the Department"). The issues we must resolve are: 1) whether the trial court based its decision upon clear and convincing evidence; and, 2) whether Kashdan waived her right to challenge the merits in the instant case as they were not raised in her initial appeal. For the following reasons, we conclude that, although Kashdan did not waive her right to challenge the sufficiency of the evidence against her, her assignment of error still fails as the trial court's decision was supported by clear and convincing evidence. Accordingly, we affirm the decision of the trial court.
On April 9, 1998, the Department obtained an ex parte emergency order from the trial court granting temporary custody of Dillon (age 4), Ronald (age 5), and River (age 3), to the Department. On April 10, 1998, the Department filed a complaint alleging the children were dependent. Custody was granted to the Department and a case plan was filed and adopted on June 4, 1998. The case plan called for Kashdan to: 1) obtain appropriate housing; 2) become involved with social activities; and, 3) use appropriate daycare for her children.
A merits hearing was held on October 29, 1998 at which time the Guardian ad Litem (hereinafter "GAL") recommended the children be placed in the permanent custody of the Department. At this initial hearing, the trial court heard evidence from the Department, the GAL, and Kashdan herself. The GAL testified she investigated this matter to the best of her ability, however, she could not visit Kashdan's residence as she did not have a home at that time. The GAL further stated that she could not locate the father.
The GAL explained that Kashdan had been at the Christina House for domestic violence for the previous three weeks and had also spent time in a shelter in Tuscarawus County where she was involved in AA. She was currently unemployed and homeless and had recently been incarcerated for both DUI and drug possession. Although the GAL conceded that Kashdan had made attempts to seek treatment, she testified this had only occurred in the month prior to the hearing.
Ginger Wilzchak (hereianfter "Wilzchak"), an intake and assessment worker for the Department, testified that its involvement began when the Department received a call on April 9, 1998 from the Minerva Police Department. The three boys had been brought in by their thirteen year old babysitter. The youngest son had bruises on his bottom. The oldest son claimed his brother had been hit by the babysitter with a spoon. When the babysitter was questioned by the police, she could not inform them of Kashdan's whereabouts. At that time, Kashdan had been living at the Star Motel in Minerva and would usually not arrive home until two or three in the morning. Kashdan was employed as a dancer at a local club and had purportedly given the phone number of the club to the babysitter.
Kashdan was formerly living in Texas with her two other biological children. Because they were homeless, the biological father requested that Kashdan move to Ohio. After the move, the biological father took custody of the two children and "threw her" and her three boys out of his house leaving them homeless. The Department then testified that social services from Carroll County had been trying to place Kashdan and her children in a homeless shelter. However, Kashdan did not want to move into the shelter because they would not allow her to keep her pet snake or iguana.
Carrie Mitchell (hereinafter "Mitchell"), the foster care caseworker assigned to the case by the Department, testified that the goals of their case plan for Kashdan included: 1) housing issues; 2) social support; and, 3) daycare. Mitchell explained how they attempted to assist Kashdan in meeting these goals, however, she wasn't "real available for us * * * we weren't really sure where she was at * * * sometimes it was difficult to find out where was [sic] to know if she was coming back." At one point, Kashdan had obtained housing from a man who rented his home out to her. However, Kashdan reported she had moved to a shelter after this man had beaten her.
In regards to Kashdan's visitation of her children, the Department testified that it was "sporadic at best." Kashdan visited her children eleven out of eighty-five scheduled visits. At one point, in fact, she had gone nearly a year without contacting her children. Due to her lack of visitation, the Department concluded Kashdan was not committed to the children. The Department also expressed concern over the lack of support exhibited by Kashdan. Specifically, Kashdan did not: 1) acknowledge birthdays; 2) pay support; 3) provide items for the children's care; 4) supply clothing for the children; 5) make phone calls to the children; and, 6) send letters.
In regard to daycare, Kashdan similarly failed to meet the goal of the case plan. Mitchell testified that they would prepare a list of daycare providers in her area, but Kashdan failed to obtain housing. However, Mitchell did admit that Kashdan was looking into daycare at a church in Minerva. The Department again lost contact with Kashdan. They regained communication when an employee saw her name in a local newspaper and tracked her down in jail where she was serving time for three DUI convictions.
When questioned about permanent placement of the children, Mitchell testified that the boys' current foster parents are licensed to adopt and would thus be able to keep all three boys together. The oldest son stated that he wants a place to stay and does not want to move anymore. Mitchell then testified it was important to provide the children with a stable environment as they had already been placed in four foster homes.
Finally, Kashdan took the stand and testified that she was attempting to gain recertification as a nurse's assistant. Kashdan then explained how she has had problems with men and has sought help from the church in that regard. However, she admits that being in contact with inappropriate male figures is still a big issue in her life. She similarly admits that she has a problem with alcohol but is involved in AA. Kashdan testified that she has attempted to rectify her problems by attending church and by entering one of her sons in daycare. She also testified that she would soon be employed by the Alzheimer Center. Further, she explains that the only reason why she didn't visit her children is because she lost her driving privileges after her three DUI convictions. Kashdan served sixty days for the third DUI but never notified social services where to contact her during that time period.
Kashdan testified she had a falling out with the social worker assigned to her case, and she had been told her children would be transported to her, but this was never carried out by social services. She later admitted that she only asked the social worker for a ride once but never bothered asking again. She explained that for eleven months she could not find transportation. She stated that even people from her church group refused to drive her to visit her children. In regard to her other two children, Kashdan testified that their father will not permit her to see them. While she was living with these children in Texas, they had been taken away from Kashdan by the court. When questioned about meeting the goals of the case plan, Kashdan admitted she was unsuccessful at finding suitable housing for her children but just needed more time. Kashdan also confessed that she has been employed solely as an "entertainer" at area nightclubs. She conceded it was possible that prostitution is involved at her place of employment.
After hearing all the evidence, the trial court decided on November 15, 1998 to terminate Kashdan's parental rights. Kashdan timely appealed that decision to this court claiming the trial court could not exercise jurisdiction over her without first serving notice on the father. This court agreed and remanded the case for further proceedings in the case styled In re Stephens (May 17, 2001), 7th Dist. No. 00-CO-2. Upon remand, the trial court obtained jurisdiction over both Kashdan and the father. The trial court reheard the matter on September 27, 2001.
At the second merits hearing, the trial court stated, "except for additional participation of the Father and his counsel, the transcripts prepared for the purpose of the appeal shall serve in lieu of repetitious testimony of the scheduled proceeding." Both parties then agreed to stipulate to the admission of the prior testimony. Notably, the trial court gave all parties the opportunity to offer additional testimony which would not have been a part of the original transcripts.
At this second hearing, the GAL again recommended that the motion for permanency should be granted leaving the children available for adoption. The GAL explained its decision stating that Kashdan had not contacted her children for two years. Kashdan again took the stand and testified that she made one attempt to gain visitation with her children but then gave up trying. Kashdan further testified that she was residing at Lifeline in the Heritage Apartments and was employed as a waitress at the Ivystone. In its October 5, 2001 judgment entry, the trial court determined there had been no change in circumstances and once again elected to terminate Kashdan's parental rights. It is from that ruling that Kashdan filed an expedited appeal, with Kashdan submitting her brief on December 27, 2001 and the Department on February 15, 2002.
Although no specific error is assigned in Kashdan's brief, it can be gleaned from her final statement, "it cannot be proven by clear and convincing evidence that the mother violated Revised Code 2151.414 (E)" that Kashdan is challenging the weight of the evidence.
As a preliminary matter, we must first resolve whether Kashdan has waived that particular error in light of her original appeal. More specifically, the Department argues Kashdan should be barred from raising this assignment of error because it could have been brought to our attention in the original appeal. In support of its contention, the Department relies upon Ferguson v. Allied Anesthesia (May 16, 1999), 10th Dist. No. 88AP-483. In Ferguson, the Tenth District held:
 "Although plaintiffs maintain they would be placed in an `impossible dilemma' of either `waiv[ing] the procedural irregularity, or waiv[ing] the merits of the case,' that is not the case. Plaintiffs could have raised as error the procedural irregularity of finding `no just reason for delay' as applied to Allied, as well as the merits of the Allied case in that first appeal. Hence, plaintiffs' failure to raise the procedural irregularity as an error in the appeal resulted in waiver." Id. at 2.
Similarly, the holding of In re Guardianship of Maunz (1991),77 Ohio App.3d 760, 603 N.E.2d 1045 determined, "Any assignments of error which could have been raised on the first appeal cannot subsequently be raised herein as they are barred by res judicata." See also Bosco v.Euclid (1974), 38 Ohio App.2d 40, 67 O.O.2d 209, 311 N.E.2d 870 and Knoxv. Knox (June 17, 1981), 3rd Dist. No. 14-80-11.
In the first appeal, Kashdan's sole assignment of error claimed the trial court failed to acquire jurisdiction over the parties for the purpose of terminating parental rights, specifically the children's father. Although this Court held that Kashdan had received adequate notice, nonetheless she was prejudiced by the defective service upon the father, citing In re Call (Apr. 12, 2001), 8th Dist. No. 78376, at 4. InCall, the court determined:
"A complaint for permanent custody leads to an adversarial proceeding which can deprive parents of all rights in their children. In re Miller, supra, at 190. To grant permanent custody, the court is required to find that the child cannot be returned to either parent. See R.C. 2151.414(E). Where one parent is unable to defend against this challenge, prejudice to the other parent is inherent. In re Sky Jones, (Nov. 22, 2000), Cuyahoga App. No. 76533, unreported. Specifically, in In re Sky Jones, this court held that a parent's potential retention of parental rights are prejudiced where the court fails to secure proper service and consider the other parent's defenses to the termination of parental rights. Here, the termination of Mr. Call's parental rights, made without a full adjudication of whether the child could be placed in the mother's potential custody, is inherently prejudicial to Mr. Call. As such, he may challenge the error committed against Mrs. Call and has standing to challenge the termination of his parental rights as void for failure of service upon Mrs. Call." Id. at 4.
We sustained Kashdan's assignment of error and remanded the case to the trial court so the father could be properly served with notice of the permanency action. We must now determine whether the trial court's initial determination was void against both parents, or just against the party without notice, i.e. the father.
It is well recognized that the right to raise a child is an "essential" and "basic" civil right. In re Murray (1990), 52 Ohio St.3d 155, 157,556 N.E.2d 1169, quoting Stanley v. Illinois (1972), 405 U.S. 645, 651,92 S.Ct. 1208, 31 L.Ed.2d 551. A parent's right to the custody of his or her child has been deemed "paramount." In re Perales (1977),52 Ohio St.2d 89, 97, 6 O.O.3d 293, 369 N.E.2d 1047. Permanent termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case." In re Smith
(1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45. Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.
Normally, under the doctrine of res judicata, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, syllabus. However, unlike other types of actions, permanent custody actions require the court to look at the past, present and future when determining the child's best interests and whether the child can be placed with a parent or will be able to be placed with a parent within a reasonable time period. See R.C. 2151.414.
The decision of In re Vaughn (Dec. 6, 2000), 4th Dist. No. 00CA692, followed the logic that,
 "Inasmuch as the juvenile court is vested with continuing jurisdiction to review and, if necessary, modify its dispositional orders, we conclude that res judicata does not prohibit the litigation of issues relevant to a motion for permanent custody even though the same or similar issues may have been considered in a prior action falling within the purview of R.C. Chapter 2151. In re Burkhart (Aug. 19, 1991), Butler App. No. CA90-07-146, unreported." Vaughn at 7.
The Vaughn court further held, under R.C. 2151.414(D) and (E), the court is required to look at all relevant evidence in determining whether permanent custody is in the children's best interests and whether the children cannot be placed with their parents within a reasonable time period or should not be placed with their parents. To further the interests of the children, the court must consider any evidence available to it, including a parent's pattern of conduct. Some of the most reliable evidence for the court to consider is the past history of the children and the parents. Id. at 7.
In light of the foregoing, we conclude the issue raised in the instant appeal would have been premature if raised in the first appeal. Significantly, the Call court found it unnecessary to reach the issues presented in the remaining assignments of error in light of its resolution of the first assignment of error, rendered moot in accordance with App.R. 12(A)(1)(c). This Court remanded Kashdan's first appeal based upon the same procedural defect complained of in Call. Thus, we also would have rendered moot any additional assignments of error Kashdan may have raised.Finally, R.C. 2151.414 mandates a finding that the child cannot be returned to either parent before the child is handed over to the permanent custody of the state. Consequently, any error based on the trial court's decision to terminate Kashdan's parental rights would not be ripe without the trial court first having jurisdiction over both parents. Accordingly, we hold Kashdan should not be barred from raising a manifest weight argument because this issue was not fully litigated in the prior case. We will now proceed to address Kashdan's sole assignment of error on its merits.
Kashdan challenges the sufficiency of the evidence upon which the trial court terminated her parental rights. Termination of the rights of a birth parent is an alternative of last resort, but is sanctioned when necessary for the welfare of the child. In re Wise (1994),96 Ohio App.3d 619, 624, 645 N.E.2d 812, citing In re Cunningham (1979),59 Ohio St.2d 100, 105, 391 N.E.2d 1034. When a child is not abandoned or orphaned, permanent custody may be granted to a public children services agency under R.C. 2151.414(B) if the court determines by clear and convincing evidence that it is in the best interest of the child to grant permanent custody; and, the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. In reBrofford (1992), 83 Ohio App.3d 869, 877, 615 N.E.2d 1120.
Applying R.C. 2151.414(B), the trial court was required to consider all relevant factors in determining the best interest of the child, including, but not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child * * *;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D).
After making that initial finding, the trial court must next determine that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. In making that assessment, R.C. 2151.414(E) requires the trial court to consider all relevant evidence and to find that one of the circumstances provided for in the statute exist. Cf. In re William S. (1996), 75 Ohio St.3d 95,661 N.E.2d 738. These factors include:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code;
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
"* * *
"(10) The parent has abandoned the child.
"* * *
 "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
"* * *
"(16) Any other factor the court considers relevant."
On October 5, 2001, the trial court chose to terminate Kashdan's parental rights. In making its decision, the trial court took into account several factors including testimony regarding the following: 1) Kashdan had been living in a motel with her children; 2) the thirteen year old babysitter was suspected of physical abuse; 3) Kashdan was employed as a dancer/entertainer; 4) Kashdan opted to keep a pet snake and iguana instead of accepting appropriate housing for her children; 5) the children have been in foster care for over three years; 6) the whereabouts of the father are unknown; 7) Kashdan has a long history of drug and alcohol abuse; 8) Kashdan has not visited her sons since October 19, 1999; 9) Kashdan has spent a great deal of time being rehabilitated and incarcerated for her multiple DUI convictions; 10)Kashdan has made virtually no progress on her case plan; 11) Kashdan visited her children only 11 times out of a possible 85; 12) Kashdan has failed to pay any child support; and, 13)it appears that adoption by the boys' current foster parents is very likely.
The juvenile court, as the trier of fact, is to weigh the testimony and credibility of witnesses. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21,550 N.E.2d 178. When reviewing the juvenile court's judgment, we must determine from the record whether the trial court had sufficient evidence to satisfy the clear and convincing standard. Wise, supra. Clear and convincing evidence requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of syllabus; see, also, In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 481 N.E.2d 613.
"The standard of review for weight of the evidence issues, even where the burden of proof is `clear and convincing,' retains its focus upon the existence of `some competent, credible evidence.'" Hawn v. Pleasant
(June 1, 1999), 4th Dist. No. 98CA2595, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. Therefore, when reviewing awards of permanent custody to public children services agencies, judgments supported by some competent, credible evidence must be affirmed. In reThomas (Mar. 9, 2000), 8th Dist. Nos. 75330, 75331 and 75332; In re Rowe
(Jan. 30, 1998), 4th Dist. No. 97CA2529.
Once a court determines, by clear and convincing evidence, that one of the enumerated factors exists, the court must enter a finding that the child cannot or should not be placed with either of his parents within a reasonable time. In re Shanequa H. (1996), 109 Ohio App.3d 142,671 N.E.2d 1113; In re Higby (1992), 81 Ohio App.3d 466, 611 N.E.2d 403. After weighing the testimony in the present case, the trial court determined:
"It is in the best interest of these children to grant permanent custody to the Columbiana County Department of Human Services because these children have been abandoned by their father and nearly so by their mother. These children should not be placed with either of their parents, neither of whom have shown any interest in them. The parents have shown a lack of commitment to their children by failing to provide a suitable home, food, clothing, attention, and medical care. As even the oldest of these children have expressed, all three of these children are in need of a legally secure placement and that type of placement cannot be achieved without a grant of permanent custody to the Columbiana County Department of Human Services." (Judgment Entry)
With this judgment entry, the trial court determined: 1) it was in the best interest of the children to terminate parental rights; and, 2) the children could not be placed with either parent within a reasonable time or should not be placed with the parents. We find both determinations to be based upon some competent credible evidence that meets the level of clear and convincing evidence. Kashdan's assignment of error is meritless. The judgment of the trial court granting permanent custody to the Department is affirmed.
Donofrio, J., and Waite, J., concur.