This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Octavia Schafer, appeals from a judgment of the Lorain County Court of Common Pleas that terminated her parental rights to one of her minor children and placed the child in the permanent custody of Lorain County Children Services ("LCCS"). We affirm.
Schafer and her children have been involved with LCCS for several years. The primary concerns of LCCS regarding Schafer's ability to parent her children were her drug problem and her inability to provide a stable environment for the children. The only child at issue in this case is the youngest of Schafer's four children, Justin. Justin was born February 13, 2001, while Schafer was serving a one-year period of incarceration for convictions of theft and receiving stolen property. Justin was placed in foster care shortly after he was born. LCCS developed a case plan for Schafer, which again included among its objectives that Schafer successfully complete a drug treatment program and follow all of its recommendations.
LCCS moved for permanent custody of Justin on November 30, 2001. Following a hearing on the motion, the trial court granted the motion of LCCS and placed Justin in its permanent custody.[1] Schafer appeals and raises three assignments of error that will be consolidated for ease of review.
 ASSIGNMENT OF ERROR I "The trial court erred as a matter of law in granting the motion for permanent custody of Justin Schafer to Lorain County Children Services as said finding was against the manifest weight of the evidence as it was not in the best interest of Justin Schafer."
 ASSIGNMENT OF ERROR II "The trial court erred as a matter of law in determining that Justin Schafer should not be placed in his mother's custody within a reasonable time when it [did] not find, by clear and convincing evidence, that any of the factors enumerated in Section 2151.414(E) of the Ohio Revised Code existed in this case."
 ASSIGNMENT OF ERROR III "The trial court erred to the prejudice of Appellant and in violation of the Fourteenth and Ninth Amendments of the United States Constitution and Article I, Section I of the Ohio Constitution when it terminated the parental rights of Appellant and granted permanent custody of the minor child to Lorain County Children Services, where the evidence failed to satisfy the requisite standard of proof."
When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983, at 3. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Id.
Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994),96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, who is not abandoned, orphaned, nor has been in the temporary custody of the agency for at least twelve months of the prior twenty-two months period, it must find by clear and convincing evidence that (1) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C.2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C.2151.414(D). See R.C. 2151.414(B)(1); see also, In re William S. (1996),75 Ohio St.3d 95, 99. Schafer argues that the trial court did not have clear and convincing evidence before it on either of the two prongs of the test.
When determining whether the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, the juvenile court must find by clear and convincing evidence that at least one of the enumerated factors in R.C. 2151.414(E) exists as to each of the child's parents. The juvenile court should consider all relevant evidence when making such a determination. Id. If the court finds that any of the conditions enumerated in R.C. 2151.414(E) exist, the statute mandates that the court enter a finding that the child cannot or should not be placed with either parent within a reasonable time. In re Higby
(1992), 81 Ohio App.3d 466, 469.
The factors enumerated in R.C. 2151.414(E) that are relevant here are:
 "Following the placement of the child outside the child's home * * *, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *[;]
 "Chronic * * * chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year * * *[.]" R.C. 2151.414(E).
Justin was placed outside the home primarily because his mother was incarcerated at the time he was born. In addition to Schafer's incarceration and the problems it posed, LCCS was primarily concerned about her "long history of involvement with drug usage." According to her caseworker, Schafer's history of drug abuse dated back to 1996 or earlier. At the permanent custody hearing, Schafer's caseworker testified that he did not believe that Justin could be placed with Schafer anytime in the foreseeable future due to her history of continual drug abuse relapse and her lack of stability. That opinion was supported by other evidence before the trial court.
By Schafer's own admission, her problem with drugs dated back to 1996. Her two oldest children had been in the legal custody of her mother since that time. Schafer had been in and out of several treatment programs but repeatedly relapsed. She tested positive for cocaine while pregnant with her third child, who had also been cared for primarily by Schafer's mother for most of his lifetime. On June 23, 1997, Schafer was convicted of possession of heroin and possession of drug paraphernalia. Although she remained sober for several months while incarcerated for that conviction, she began using drugs again shortly after she was released. Schafer twice tested positive for cocaine while she was pregnant with Justin. She has remained sober since Justin's birth but, as in the past, this appears to be an involuntary sobriety due to her incarceration. Since 1996, Schafer has never been able to maintain voluntary sobriety for an extended period of time.
Schafer and her mother both referred to Schafer's periods of drug use as when she was on the streets, for she apparently would leave home and not be seen for long periods of time. During one such period, she was apparently gone for several months. Schafer admitted at the permanent custody hearing that, when she was using drugs, she was not there for her children and she did not want to have responsibilities.
Schafer did not complete drug treatment while incarcerated. At the hearing, Schafer testified that she had become a new person while incarcerated and that she was ready to assume the responsibility of caring for Justin and her other children. "At [this] point in time, I'm willing to do whatever it takes * * * even if it means me going into Rehab after I get released." Aside from her apparent lack of insight into the severity of her drug problem, Schafer was not due to be released for two more months and she had not taken even the first step toward conquering her drug problem. Schafer had a long history of drug abuse and, despite several drug treatment programs in the past, she had been unable to break her cycle of continual relapse. She had remained involuntarily sober during her prior incarceration, but relapsed into drug use shortly after her release from prison. The trial court had ample evidence before it from which it concluded that Schafer failed to remedy the conditions causing Justin to be placed outside the home and that, due to her chronic drug addiction, she would not be able to provide an adequate home for Justin at that time or within the following year. Therefore, because both R.C. 2151.414(E)(1) and 2151.414(E)(2) were satisfied, the trial court did not err in concluding that Justin could not be placed with Schafer within a reasonable time or should not be placed with her.
To satisfy the next prong of the permanent custody test, the trial court was required to find that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1). See, also, In re William S. (1996), 75 Ohio St.3d 95, 97-98. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
 [C]onsider all relevant factors, including, but not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed * * * through the child's guardian ad litem[;]
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]"
R.C. 2151.414(D)(1)-(4)[2].
In her argument on appeal, rather than focusing on the relevant evidence before the court pertaining to Justin's best interest, Schafer devotes most of her argument to the efforts made by LCCS to reunify mother and child. Because that issue was not assigned as error, however, this court will not address it. See Akron v. Wendell (1990),70 Ohio App.3d 35, 46.
The evidence relevant to the best interest prong of the permanent custody test was as follows. Schafer had limited interaction with Justin because she was incarcerated. Justin was brought to the prison for monthly visits. The caseworker observed that Schafer's attention was not usually focused on Justin during the visits but that she instead spent much of the time talking to her mother about her own needs. The caseworker also observed some inappropriate behavior by Schafer, such as giving Justin Pepsi in his bottle in spite of the caseworker's attempt to correct the behavior. Justin apparently did not have visits with his siblings. Although the older children also visited with Schafer at the prison, they apparently came at different times. As the guardian ad litem noted, Justin was not integrated into this family.
During his testimony, the caseworker contrasted the interaction with Justin that he observed at the foster mother's home. During his unannounced visits, the caseworker would arrive to find the child being held and in a loving environment. Justin appeared to be very bonded both with the foster mother and her adopted child. The foster mother had expressed her desire to adopt Justin.
Because Justin was only ten months old at the time of the hearing, his wishes were expressed through the guardian ad litem. As noted above, the guardian ad litem indicated that Justin was not integrated into his biological family. She opined that it would be in Justin's best interest to be placed in the permanent custody of LCCS.
Justin had spent the entire ten months of his life, but for the first few days, in the custody of the same foster mother. He has never lived with his mother and barely knows her. He has a need for a legally secure placement and the evidence established that such a placement could not be established without granting LCCS permanent custody. There were no suitable relatives available to take legal custody of Justin and Justin could not be placed in the custody of Schafer any time in the foreseeable future. Schafer was still in prison and, even after her release, she still faced the challenge of completing drug treatment and securing independent housing.
Given the evidence before the trial court, we cannot say that it lost its way in concluding that permanent custody to LCCS was in Justin's best interest. Therefore, as both prongs of the permanent custody test were established, the trial court did not err in placing Justin in the permanent custody of LCCS. The assignments of error are overruled.
The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.
WHITMORE, J. CONCURS.
[1] Although the trial court also denied the maternal grandmother's motion for legal custody, that aspect of the judgment has not been challenged on appeal.
[2] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.